## 22901.   EQUITABLE LIFE ASSURANCE SOCIETY *v.* FLORENCE.

712

*Colquitt, Parker, Troutman & Arkwright, R. N. Hardeman Jr.,* for plaintiff in error.

*Phillips & Abbot,* contra.

Guerry, J. Mrs. Irene Florence brought suit against the Equitable Assurance Society upon a policy of insurance issued upon the life of her husband, Joseph P. Florence. This was what is known as group insurance, the "master policy" being issued to the Standard Oil Company and the individual policies based thereon being issued to the employees of that company. The insurance company admitted the execution and delivery of the policy sued on, but liability was denied by it upon the ground that in delivering the policy to Joseph P. Florence it acted upon the assumption and belief that he was an employee of the Standard Oil Company, when as a matter of fact he was not an employee of the Standard Oil Company, and that it, the insurance company, thought and believed that the policy was being issued to James P. Florence, who was the father of Joseph P. Florence and who was an employee of the Standard Oil Company instead of Joseph P. Florence; that J. P. Florence and Joseph P. Florence had the same name and were father and son; that J. P. Florence Sr. was the employee of the Standard Oil Company, and the policy was issued through mistake. They claimed also that the premiums thereon were paid by J. P. Florence Sr. Mrs. Florence contended that her husband was an employee of the Standard Oil Company and entitled to participate in the group-insurance policy, that the certificate was properly issued to him, and that he paid the premiums. The verdict was in favor of Mrs. Florence, and the insurance company's motion for a new trial having been overruled, it excepted.

The policy was issued May 1, 1930, and the death occurred in September, 1931. There were no allegations of fraud. The evidence disclosed the fact that the application for this insurance was made to the Standard Oil Company. The application set out the

fact that Joseph P. Florence, 40 years old, was the agent of the Standard Oil Company, at Wrens, Georgia, and named Irene Florence, his wife, as beneficiary. The Standard Oil Company, acting on the application, had the Equitable Life Assurance Society issue the policy to J. P. Florence, dated May 1, 1930. J. P. Florence Sr. was 66 years of age. Joseph P. Florence died September 22, 1931. The evidence of the plaintiff showed that Joseph P. Florence was agent of the Standard Oil Company at Wrens from 1914 to 1916, and that at that time the company was about to take the agency away from him when J. P. Florence Sr. agreed with it that he would become responsible for the keeping of the books and for all the financial transactions, but would not agree to personally handle the products in the event they would retain Joseph P. Florence in their employ. Written agreements executed in 1929 and 1930 were introduced showing the appointment and acceptance of J. P. Florence (the father), as agent of the Standard Oil Company at Wrens, Georgia. Joseph P. Florence continued from 1914 until the time of his death in 1931 to be in active charge of the company's affairs, in selling, handling, and accounting for sales, and was consulted by the company in Atlanta, obeyed their instructions, received their checks, indorsed, and got the money on them. J. P. Florence Sr. did not get the money, but assumed the responsibility for the benefit of his son. There was evidence showing that the company had knowledge of and accepted the fact that Joseph P. Florence should be in active control of their station at Wrens, Georgia. The incontestable clause in the policy was as follows: "This contract shall be incontestable after one year from its date of issue, except for nonpayment of premiums or violations of the condition of the policy relating to military or naval service in time of war."

■ One of the main issues in this case is whether or not Joseph P. Florence was an employee of the Standard Oil Company, the company insisting that by the written contracts introduced in evidence for the years 1929 and 1930, J. P. Florence (the father) was the agent and not Joseph P. Florence, the son. Evidence on behalf of the plaintiff tending to show the actual conduct of Joseph P. Florence during the period of years from 1914 up to the time of his death, in his relation to and in the handling of the affairs of the Standard Oil Company at Wrens, Georgia, was objected to by the defendant on the ground that all conversations and conduct of

Joseph P. Florence became merged into the written contracts entered into between J. P. Florence Sr. and the Standard Oil Company. Such evidence might be inadmissible in a proceeding between J. P. Florence Sr. and the Standard Oil Company, but not objectionable as showing an agreement or course of conduct as between the Standard Oil Company, and Joseph P. Florence. Such evidence does not attempt to contradict or vary the valid written agreement between J. P. Florence Sr. and the Standard Oil Company. Joseph P. Florence is a stranger to such contract. In *Dickey* v. *Grice,* 110 *Ga.* 315 (35 S. E. 291), it was said: "One who is a stranger to a deed or other instrument in writing is not bound by any recitals therein contained, and accordingly has the right to contradict the same by parol evidence and show the writing does not express the real truth of the transaction." The binding obligation of the writing between the parties thereto is not affected by the evidence sought to be introduced, even though it show motive of the party executing it. See *Rucker* v. *Brown,* 6 *Ga. App.* 361 (3) (65 S. E. 55). Joseph P. Florence or his widow may show that as a matter of fact he received, handled, sold, controlled, and accounted for the products of the Standard Oil Company at Wrens, Georgia; that the checks came to J. P. Florence and were indorsed by Joseph P. Florence and the money used by Joseph. P. Florence. He may show how he dealt with them, what he actually did, and how he was treated by them in the handling of their products at Wrens. The court did not err in admitting such evidence to the jury.

■ The court properly charged upon the question of shifting of the burden of proof. When and if the plaintiff makes out a prima facie case, the burden is shifted to the defendant. *Joiner* v. *Metropolitan Life Insurance Co.,* 40 *Ga. App.* 740 (151 S. E. 540).

■ The exceptions to the charge contained in grounds 15, 16, 17, 18, 19, and 20 are without merit. The fact that J. P. Florence Sr. had a written contract with Standard Oil Company does not preclude the employment of Joseph P. Florence, and the charge complained of was pertinent and proper. The exceptions in grounds 20a, 21, 22, 23, and 24 are without merit.

■ In the absence of fraud and in the absence of proof of accident or mistake, the company is bound by the terms of the appli-

cation and the policy issued thereunder. The jury were authorized to find that Joseph P. Florence had been in active charge of the affairs of the Standard Oil Company, at Wrens, Georgia, from 1914 to 1931, the time of his death. He checked in and actively handled the products; he sold and delivered the products; he visited the customers; he made repeated trips to the Atlanta office of the Standard Oil Company; he cashed the checks and received the money for the services rendered; he made application for the insurance to the Standard Oil Company, correctly giving his age, his full name, represented to it that he was the employee of the Standard Oil Company, and named his wife as beneficiary. The evidence disclosed that J. P. Florence Sr. was 66 years old, and that Joseph P. Florence was 40 years old. The Standard Oil Company was authorized to receive and transmit applications for insurance and to issue certificates. It was peculiarly within the knowledge of the Standard Oil Company whether Joseph P. Florence was in its employ. The insured named himself as employee, the employer ratified the claim, and had the policy issued, and accepted payments thereunder. There were no misrepresentations on the part of the insured. If he was not the employee, the Standard Oil Company had actual knowledge of the fact. It was the agent of the insurance company in submitting the application and having the policy issued.

■ The policy had the following incontestable clause: "This contract shall be incontestable after one year from its date of issue except for non-payment of premiums or violations of the conditions of the policy relating to military or naval service in time of war." In Mutual Reserve Fund Life Asso. v. Austin, 73 C. C. A. 498 (142 Fed. 398, 6 L. R. A. 1064), it was said that an incontestable provision after the lapse of the stipulated time "can not be held to be inapplicable in a policy delivered when the insured was not in good health, on the theory that because the policy provided that it should not take effect until delivered while the insured was in good health, it never was in force." It is insisted by the plaintiff in error that there never was a contract between the parties, because there never was a meeting of minds, and for that reason the policy never was in force; that the relation of employer and employee must exist in the first place, and that such relation never in fact existed. It can not be doubted that the rela-

tion must exist at the time the loss occurs. It is also true, under the evidence in this case, that if it existed in May, 1930, at the time of the issuance of the policy, it existed at the time of the death of the insured. Under the principle in the Austin case, supra, "good health" at the time of the delivery of the policy was a condition precedent to the validity of the contract, yet it held that the incontestable clause was effective after the lapse of the required time. In discussing this case the court said: "It is the purpose of an ordinary incontestable clause to annul all warranties and conditions that might defeat the right of the assured. . . An agreement that a policy shall be incontestable is of no significance unless we assume the existence of grounds of contest in the terms of the contract, or in extrinsic facts. If the policy is not to be regarded as in force during the first three years [one year in the case at bar] provided that after three years [one year in the case at bar] the company is able to show a breach of warranty or of conditions, then this incontestable clause is of no value, save as a deceptive inducement to those seeking insurance. A construction which renders the clause self-destructive and of no avail to the assured is to be avoided, 'parties to a contract are always to be supposed to have intended something, rather than nothing by what they have said.' " See also Grier v. Mutual Life Insurance Co., 132 N. C. 542 (44 S. E. 28). In the case of Mutual Life Insurance Co. v. Luke, 125 La. 41 (27 L. R. A. 431), it is said: "The gravity of the wrong can not affect the incontestability of the policy after the two years; for to permit it to affect the policy would be to create degrees of fraud." Justice Cobb, in *Massachusetts Benefit Life Asso.* v. *Robinson,* 104 *Ga.* 256, 270 (30 S. E. 918, 42 L. R. A. 261), said: "The contract entered into between the insurer and insured in the 'incontestable clause' is, in effect, that the insurer says, on his part, pay me your premiums according to the terms of the contract, and I will pay at your death to the beneficiaries named in the policy the amount thereof without regard to the statements which you make in your application, whether they be true, or whether they be false." Quoting further: "Where parties enter into a contract which from its nature affords an opportunity to one party to perpetrate a fraud upon another, and it is stipulated therein that the party who is liable to be defrauded shall have a specified time in which to make in-

quiry as to the acts and conduct of the other party, he is on notice by the very terms of the contract itself that fraud may be involved in it, and the duty is upon him to commence at once an investigation into the acts, conduct and representations of the other party; . . and . . after the lapse of [the time fixed] fraud is no longer a defense. . . A stipulation like the one under consideration ought to be an incentive to the insurer to exercise vigilance and good faith in investigating the truth or falsity of the representations upon which the policy is issued while the matter is fresh. The witnesses are all alive, and the exact truth can, if ever, be ascertained, and the stipulation prevents the insurer from lying by and receiving the premiums during the life of the insured, and after his death, when the good faith and truth of his representations can not be supported by his oath, contesting the policy upon the grounds that the insured's representations were false or untrue." In the present case the insured in his application represented himself to be the employee of the Standard Oil Company in a named capacity. After the lapse of the stipulated time and after the death of the insured the company attempts to say that there never was a contract, because there was never a meeting of minds, for the representations made were untrue. We can not agree to this position. It appears that the insured, in good faith, so far as the record shows, made application to be insured as an employee of the Standard Oil Company. He truthfully represented his age and the other required facts. If the incontestable clause applies in cases of actual fraud, it applies all the more in a case of the present kind. If the insured was an employee at the time of the issuance of the policy, he was an employee at his death, for it is undisputed that his relation to the Standard Oil Company continued the same. The incontestable clause estops the insurer from denying that the insured was an employee at the time of the issuance of the policy. The evidence warranted the verdict, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*