35120.   CASON *v.* AETNA LIFE INSURANCE COMPANY.

Decided December 3, 1954—Rehearing denied December 16, 1954.

326

*Smith, Kilpatrick, Cody, Rogers & McClatchey,* for plaintiff in error.

*Bryan, Carter, Ansley & Smith, W. Colquitt Carter,* contra.

QUILLIAN, J. (After stating the foregoing facts.) In the interest of brevity this opinion will refer to Fred B. Cason as the

insured, the City of Atlanta as the city, to the plaintiff in error as the plaintiff or beneficiary according to which term is more convenient in our discussion of the case, and reference will be made to the defendant in error as the company.

It will be observed from the foregoing statement of facts that the policy sued upon was not a single instrument, but consisted of the master or group policy issued by the company to the city, the certificate issued by the company to the insured by its terms insuring his life for $2,500, and the document designated as a rider to the certificate increasing that amount to $4,000.

The rider contained a clause that its effective date would be the date on which it was delivered to the insured, provided he was, on that date, regularly performing the duties of his occupation. There was a clause in the group policy quoted in the statement of facts, that employees applying for insurance under the group policy before the date of their eligibility to be insured according to its provisions, would be insured from the date of their eligibility if then performing the duties of their occupations.

The insured was not regularly performing the duties of his occupation at the time the rider increasing the amount of the insurance on his life by $1,500 was issued, nor did he at any time thereafter until his death perform them. The date of the certificate of insurance originally issued to him was April 1, 1949, the date of the delivery of the rider to him was January 1, 1952, and the date of his death was April 17, 1952.

Since the insured was not regularly performing the duties of his employment at the time the certificate of additional insurance was issued to him, he was not, under the terms of the group policy and of the certificate itself, eligible for the increased amount of insurance represented by the certificate.

It follows that had there been no evidence past this point the plaintiff beneficiary would not have been entitled to recover.

The plaintiff contends, however, that the City of Atlanta was the agent of the insurance company in delivering the certificate of increased insurance; that the city knew of the employee Cason's ineligibility to be insured under the certificate of additional insurance both at the time it was delivered to him and continuously until his death; and that the knowledge of the city was imputable to its principal, Aetna Insurance Company.

According to textbook authors and decisions of various jurisdictions, the majority view prevailing in the United States is that the employer—in doing what is required to make effective a group policy of insurance covering employees, such as obtaining the employees' applications for coverage under the policy, delivering certificates to employees showing that they are protected by the policy, making deductions from employees' wages to pay premiums necessary to keep the policy in force, reporting changes in the status of employees originally covered by the policy, and the eligibility of new employees to be insured, according to its terms and similar acts—is the representative of the employees and not the agent of the insurance company.

However, the opinions of the textbook writers are not in entire agreement on the subject and opinions of appellate courts of several States, particularly that of the Supreme Court of South Carolina, support the opposite view, holding the employer the agent of the insurance company for every purpose necessary to make effective the group policy. There are several opinions of this court that support the majority view. *Blaylock* v. *Prudential Ins. Co. of America*, 84 *Ga. App.* 641 (67 S. E. 2d 173); *Lancaster* v. *Travelers Ins. Co.*, 54 *Ga. App.* 718 (189 S. E. 79); *Thigpen* v. *Metropolitan Life Ins. Co.*, 57 *Ga. App.* 405 (195 S. E. 591).

But the older decision, *Equitable Life Assurance Society* v. *Florence*, 47 *Ga. App.* 711 (171 S. E. 317), not reversed and overruled, criticized, or distinguished, nor even referred to in the *Lancaster* case or any subsequent case above referred to, is authority for the view that the employer, in doing such acts as are necessary to obtain coverage of his employees under a group policy issued to him, to keep the policy of force and to effectuate its purposes, is the agent not of the employees but of the insurance company. In the *Florence* case at page 715 it is said: "The Standard Oil Company was authorized to receive and transmit applications for insurance and to issue certificates. It was peculiarly within the knowledge of the Standard Oil Company whether Joseph P. Florence was in its employ. The insured named himself as employee, the employer ratified the claim, and had the policy issued, and accepted payments thereunder. There were no misrepresentations on the part of the insured. If he

was not the employee, the Standard Oil Company had actual knowledge of the fact. It was the agent of the insurance company in submitting the application and having the policy issued."

Language used by Chief Justice Russell in *Carruth* v. *Aetna Life Ins. Co.*, 157 *Ga.* 608, 617 (122 S. E. 226), supports the view of this court expressed in the case of *Equitable Life Assurance Society* v. *Florence*. The Chief Justice wrote: "Construing the contract as a whole, it seems clear that the Aetna Life Insurance Company, subject to the conditions in the policy, undertook to insure the life of Ethel Harmon and her fellow employees, merely using the name of the Lanett Cotton Mills as beneficiary in order to protect itself, by such conditions precedent and warranties as are contained in the application, from liability where it would not have been legally bound under these warranties; and using the services of the Lanett Cotton Mills as an agency to see that the insurance money is paid to the proper persons, and that in all cases the canceled certificate, which indicated a decrease of the insurer's risk, should be returned to the insurance company."

We are aware that the word "agency" does not necessarily connote the existence of the relationship of principal and agent. The services of brutes and the uses of inanimate objects are sometimes referred to as the "agency" through which certain ends are accomplished. When the context in which the word as used so indicates it simply means "instrumentality." But when the word "agency" is employed as relating to a legal entity performing acts for or under the authority of another, the word means as Webster defines it, "relationship between a principal and his agent," so there can be little doubt that Justice Russell intended to hold that Lanett Mills was the agent of the insurance company, under the group policy referred to in that opinion, to pay the death benefits accruing under the policy to the beneficiary of the employee, to obtain the certificate, and return it for cancellation to the insurance company. The delivery of the certificate under a group policy is the beginning of the transaction with the employer and the insurance company; the return of the certificate when the death benefits have been paid is the last. If the employer is the agent for the one purpose, it logically follows that he is the agent for the other.

The view expressed in *Equitable Life Assurance Society* v. *Florence,* supra, and implied in the case of *Carruth* v. *Aetna Life Ins. Co.,* supra, is fortified by the provisions of Code § 56-501: "Any person who shall solicit in behalf of any insurance company . . . or who shall take or transmit, other than for himself, any application for insurance or any policy of insurance to or from such company or agent of the same, or who shall advertise or otherwise give notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk at any time, or receive or collect or transmit any premium of insurance, . . . or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or in behalf of any such company, whether any of such acts shall be done at the instance or request or by the employment of such insurance company, or of, or by, any broker or other person, shall be held to be the agent of the company for which the act shall be done or the risk shall be taken." In *Joiner* v. *Metropolitan Life Ins. Co.,* 40 *Ga. App.* 740 (151 S. E. 540), this section was applied in holding that an employer, who had agreed with the insurer to collect and transmit premiums under a group policy, was *not* the agent of the employee so as to make the employer's declarations binding as against the interest of the insured and the claimant under the policy.

Code (Ann.) § 56-2301 contains provisions authorizing cities "to make deductions periodically from the wages or salaries of its employees with which to pay the premium for life, health, accident, hospitalization, or annuity insurance, or all or any kind of such insurance, for the benefit of such employees, upon a group insurance plan, and to that end to enter into agreements with insurance companies whereby the kind of group insurance desired by the employees may be furnished to them and the premiums therefor remitted periodically by said . . . cities . . . or departments thereof." (Ga. L. 1950, p. 355.)

This section, when construed with the statute existing at the time of its enactment (Code § 56-501, supra), and in view also of the rulings of the cases cited, to the effect that an employer

may be the agent of the insurance company to furnish group insurance to its employees, indicates to us that cities are empowered "to enter into agreements with insurance companies" to furnish such insurance in the same manner and in the same capacity as would a non-governmental employer, i.e., as an agent of the insurance company.

In *Equitable Life Assurance Society* v. *Florence,* supra, an employer is held to know who his employees are, and certainly an employer would be equally as well informed as to whether one of his employees is actively engaged in the discharge of his duties he is employed to perform. It follows that the insurance company, under our law, had imputed to it knowledge of the fact that the certificate had been delivered to the employee Cason, and that he was not eligible for its benefits at the time of recording it, or any time thereafter.

Moreover, the insurance company, having chosen the city as its agent to deliver the certificate, was estopped to deny its legal qualification to act in that capacity. "There is authority for the proposiiton that when one knowingly and without dissent permits another to act as his agent, the capacity will be conclusively presumed. . . The agent's capacity to have rights or be subject to duties and liabilities is not necessary, nor are the resulting relations between the principal and third persons affected by the fact that the agent would be incapable of affecting his own legal relations by the performance of an act done on his own account similar to that done for the principal." 2 Am. Jur. 22, § 15.

The group policy, however, contained a clause that permitted delivery of a certificate to an employee not regularly engaged in the performance of the duties of his employment, and consequently not qualified for the increased protection afforded by the certificate, and it provided for the effective date of the certificate to be deferred until the employee became eligible for the additional insurance; so the mere manual possession of the certificate alone, though its delivery to the employee was authorized by the insurance company, did not entitle the employee to protection under its provisions.

But the group policy was introduced in evidence. One of its provisions read: "The company will issue to the employer for delivery to each insured employee an individual certificate con-

taining a statement as to the insurance protection to which the employee is entitled and to whom it is payable, together with a statement of the following conversion privilege. Data Required—The employer shall furnish the company with written notice on the company's form of all employees who make written application for insurance hereunder; of all employees who fail to make the required premium contribution; and of all employees whose employment is terminated."

So it clearly appears that the City of Atlanta did, after the certificate of increased insurance was delivered to the employee, certify that fact to the defendant, and likewise make known to the defendant that he was paying his premiums.

Indeed the record conclusively shows that the insurance company knew that Cason was paying the premiums necessary to keep the policy in force, by the fact that it undertook to refund the amount of these premiums and inform the city of how the computation of that amount was made.

The premiums were paid as the consideration for the additional protection afforded under the certificate of increased insurance. They were accepted by the defendant while it had knowledge, through the City of Atlanta acting as its agent, that the employee was not qualified for the increase in his insurance under the provisions of the policy.

When the premiums were accepted and retained in these circumstances, the defendant was precluded from interposing the only defense urged in the case, namely that the employee Cason was not eligible for protection under the certificate of increased insurance sued upon. *German American Mutual Life Assn.* v. *Farley,* 102 *Ga.* 720 (1, 2, 3) (29 S. E. 615); *Sovereign Camp, W. O. W.* v. *Bowman,* 40 *Ga. App.* 536 (2) (150 S. E. 436); *Peninsular Cas. Co.* v. *McCloud,* 47 *Ga. App.* 316 (3) (170 S. E. 396).

The trial judge, to whom the case was submitted without the intervention of a jury, erred in entering a judgment in favor of the defendant and in thereafter denying the plaintiff's motion for a new trial.

Because a judge of the division of this court to which this case was assigned dissents, this case is considered by the whole court.

*Judgment reversed. Gardner, P. J., Townsend, Carlisle, and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. I agree with the majority that the incontestable clause did not apply to the additional or supplemental insurance, for the reason that it never went into effect under the terms of the master policy.

I dissent from the judgment of reversal and from the ruling that the city was the agent of the insurance company. I do not believe that Code § 56-501 encompasses political subdivisions which have no authority or power to become or act as insurance agents. The sole purpose of that section is to prohibit insurance companies from escaping the legal consequences of their legal obligations and responsibilities by the subterfuge of accepting the benefits of persons who are not regularly appointed agents, but who, under the law, could be. It is clear to me that the act of 1950 (Ga. L. 1950, pp. 355, 356) had for its object and purpose to make the agencies therein enumerated the agent of employees to do the acts therein authorized, among which is to contract with insurance companies to procure insurance for employees. Numerically, the decisions of this court predominate in holding that in group-policy employee-insurance contracts, the employer is the agent for the employee. Since the oldest decisions are to the contrary and no request to review them has been made, the question is that, whatever the law is generally, under Code § 56-2301 and under the facts of this case, the city was the agent of the employee. Since the insurance company did not have notice that it was receiving the deceased's premiums except through the knowledge of the city, it was not estopped to contend that it was not indebted in the amount of the additional insurance.