Charles Richard CLEMENTS, Plaintiff,

v.

**CONTINENTAL CASUALTY INSURANCE COMPANY,**
Defendant.

No. 1:88–CV–2580–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 4, 1989.
On Reconsideration Dec. 22, 1989.

John C. Campbell, Jonesboro, Ga., for plaintiff.

Kent Taylor Stair and Robert Michael Ethridge, Webb Carlock Copeland Semler & Stair, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on plaintiff's request for a trial by jury and defendant Continental Casualty Insurance Company (Continental)'s motion for summary judgment. The Court GRANTS plaintiff's request for a trial by jury and DENIES defendant's motion for summary judgment.

## FACTS

Plaintiff is an employee of Delta Airlines. Delta offers its employees an optional group accident insurance policy, underwritten by Continental. Employees who choose to participate in the insurance program have their premiums deducted from their payroll check twice a month. Delta then forwards the premiums to Continental.

Plaintiff has participated in the insurance program since 1979. In April of 1984, plaintiff wanted to change the beneficiary of his accident policy from his recently divorced wife to his minor daughter. Plaintiff allegedly asked his foreman how to make such a change. The foreman instructed him to fill out two small forms (cards) entitled "Request for Group Accident Insurance." Following the supervisor's instructions, plaintiff completed the first card to cancel the policy that named his ex-wife as beneficiary. He completed the second card to request a new policy naming his daughter as beneficiary. He signed both cards and dated them April 25, 1984. Plaintiff also alleges that he filled out a third form to cancel his optional life insurance. (Clements Dep. at 20–21).

Plaintiff alleges that he then sent the cards to Delta's insurance department. (Clements Dep. at 37). Although defendant acknowledges that plaintiff followed a proper procedure to change the beneficiary of his policy, it alleges that it never received the information on the second card.

Beginning in May, 1984, Delta stopped deducting accident insurance premiums from plaintiff's salary. Delta continued, however, to deduct premiums for plaintiff's optional life insurance policy, which he had intended to cancel. These facts were reflected in the stubs attached to plaintiff's paychecks. Plaintiff, however, alleges that he never inspected his paycheck stubs so as to realize that the accident policy deductions had ceased. Part I of the Group Accident Policy clearly provides that coverage would immediately terminate on the expiration of the period for which the last premium was paid.

In October of 1984, plaintiff was severely injured in an accident at work. When plaintiff filed a claim under the accident policy, defendant informed him that it had cancelled his policy. On October 19, 1988, plaintiff brought this action for breach of contract in the Superior Court of DeKalb County, Georgia, seeking the $100,000 benefit payment provided under the policy. Plaintiff sought an additional $25,000 plus reasonable attorney's fees under O.C.G.A. § 33-4-6 for defendant's alleged bad faith denial of his claim. Plaintiff's complaint did not include a request for a jury trial.

On November 14, 1988, defendant removed the action to this Court based on diversity of citizenship. On the Civil Cover Sheet filed with its removal petition, defendant indicated that it did not seek a jury trial. Plaintiff did not file a demand for a jury trial at any time after removal. The parties submitted briefs regarding plaintiff's right to a jury trial pursuant to an order of this Court dated July 17, 1989.

## DISCUSSION

### I. Jury Trial

■ Defendant argues that plaintiff has waived his right to a jury trial. As defendant correctly notes, Federal Rule of Civil Procedure 81(c) provides that "a party entitled to trial by jury under Rule 38 shall be accorded it, if the party's demand therefore is served ... within 10 days after service on the party of the notice of filing the (removal) petition." Fed.R.Civ.P. 81(c). However, the ten day limitation of Rule 81(c) does not apply "[i]f state law applicable in the court from which the case is removed does not require the parties to make express demands in order to claim trial by jury." Fed.R.Civ.P. 81(c). Because "the Georgia Civil Practice Act does not require an express demand for jury trial" in suits at law, the ten day limitation of Rule 81(c) does not apply and plaintiff's request for a jury trial is timely. *Financial Building Consultants, Inc. v. American Druggists Insurance Co.*, 91 F.R.D. 62, 63 (N.D.Ga.1981) (Ward, J.) (citing O.C. G.A. § 9–11–38).

### II. Summary Judgement

#### A. Standard of Review

This court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that the nonmoving party lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Once the movant has met this burden, the opposing party must present evidence establishing a material issue of fact. *Id.* The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

While all evidence and factual inferences should be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). An issue is not genuine if unsupported by evidence or created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 249–250, 106 S.Ct. at 2511. Similarly, an act is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552; *Rollins*, 833 F.2d at 1528.

#### B. Defendant Has Failed to Meet its Burden

■ Defendant argues that it is entitled to summary judgment on two grounds. First, it argues that plaintiff cancelled his policy by sending only the first card to Delta's insurance department. Second, it argues that plaintiff cancelled his policy by failing to have premiums deducted from his paycheck and sent to defendant. As stated in the above standard of review, the Court views all factual inferences in a light most favorable to the non-moving party when ruling on a motion for summary judgment. Because plaintiff alleges that he properly sent the card requesting an accident insurance policy naming his daughter as beneficiary and has submitted a copy of that card into evidence, defendant is not entitled to summary judgement on its first ground. To rule on that argument, the Court would have to make a factual determination regarding whether plaintiff sent the second card. Therefore, the remainder of the dis-

cussion concerns defendant's second argument: that plaintiff's failure to have his premiums deducted from his salary and sent to defendant terminated his coverage as a matter of law.

Defendant correctly states the general proposition that an employee's nonpayment of group insurance premiums automatically terminates coverage where the policy so provides. *Metropolitan Life Insurance Co. v. Kohn*, 103 Ga.App. 162, 118 S.E.2d 731 (1961); *McClain v. Provident Life & Accident Insurance Co.*, 65 Ga. App. 355, 16 S.E.2d 173 (1941); *Lloyd v. Aetna Life Insurance Co.*, 50 Ga.App. 478, 178 S.E. 479 (1934). This general rule, however, does not necessarily apply when the employee attempts to pay or actually pays her premiums to the employer and the employer then fails to forward the premiums to the insurer. "A direct conflict of authority regarding the question whether an employee is covered by a contributory group policy exists where the employee makes or attempts to make the required contribution, but the employer fails to continue the premium payment to the insurance company." Annot., 22 A.L.R. 4th 321, 326 (1983). The split in authority appears to turn on whether a court views the employer as an agent of the insurance company for purposes of premium collection. *Id.* at 327. Courts viewing the employer as agent generally hold that tender of payment to the employer prevents termination of coverage. *See, e.g., General American Life Insurance Co. v. Gant*, 119 S.W.2d 693, 696 (Tex.Civ.App.1938). Courts not viewing the employer as agent generally hold that coverage terminates despite tender of payment to the employer. *See, e.g., Couch v. Connecticut General Life Insurance Co.*, 216 So.2d 72 (Fla.Dist.Ct. App.1968). No case applying Georgia law directly addresses this issue.

However, Georgia courts have held consistently that "the employer who obtains a group insurance policy covering its employees is the agent of the insurance company

for every purpose necessary to make effective the group policy, and thus the insurance company has imputed knowledge of facts which the employer knows." *Dawes Mining Co. v. Callahan*, 246 Ga. 531, 534, 272 S.E.2d 267, 269 (1980). *See also Piedmont Southern Life Insurance Co. v. Gunter*, 108 Ga.App. 236, 237, 132 S.E.2d 527, 530 (1963); *Pilot Life Insurance Co. v. McCrary*, 103 Ga.App. 549, 550, 120 S.E.2d 134, 135 (1961); *Cason v. Aetna Life Insurance Co.*, 91 Ga.App. 323, 331, 85 S.E.2d 568, 572 (1954). Therefore, it appears that Georgia law would follow those cases holding that an employee under a group insurance policy who pays or attempts to pay her premium contribution to her employer effectively tenders payment to her insurer and cannot lose her coverage for failure to pay. *See Shanks v. Travelers' Insurance Co.*, 25 F.Supp. 740, 744 (N.D.Okla.1938); *General American Life*, 119 S.W.2d at 696.

Construing the pleadings against the movant, plaintiff sufficiently tendered his premium payments to Delta to bring him within the above rule. The policy required Delta to deduct the amount of plaintiff's premiums from his paycheck and forward it to defendant. It never required plaintiff to separately tender money to Delta. By properly completing and mailing the insurance request cards, he provided Delta with everything it needed to collect his premiums and advance them to defendant.

Relevant caselaw supports treating Delta's wrongful failure to deduct premiums from plaintiff's salary and transmit them to defendant the same as a wrongful failure to transmit payments that plaintiff separately tendered. In *Bliss v. Equitable Life Assurance Society of the United States*, 620 F.2d 65 (5th Cir.1980) [1], the employer believed that it had properly terminated the plaintiff and ceased deducting premiums from her paycheck. Because the jury found that the employer did not properly terminate the plaintiff, the Court of Appeals held that "it was the obligation of

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent all former Fifth Circuit

cases submitted or decided prior to October 1, 1981.

[the employer], acting as agent for [the insurer], to pay the premiums on the policy." *Id.* at 71. The Court thus concluded that the plaintiff did not lose her coverage for failure to pay her premiums. *Id.; see also* 1 Appleman, Insurance Law and Practice § 47 (1981) ("if the insurer has in its possession sufficient funds belonging to the employee with which to pay premiums, it must apply them thereto, and cannot be heard to say that the contract has lapsed by reason of nonpayment").

Defendant asserts that plaintiff's paycheck stubs gave him constructive notice that premiums were not deducted from his salary. Therefore, defendant argues, plaintiff cannot rely on Delta's alleged negligence as a defense to nonpayment of his premiums. The Court rejects this argument. As noted above, plaintiff took every affirmative step needed for his premiums to be properly paid. An insured has no duty to monitor his insurer and its agents to verify that they are following their own internal procedures. He should be able to rely on the insurer and its agents to properly read and process their own forms.

This Court holds that under Georgia law, an employee under a group insurance policy who properly requests his employer to deduct premiums from his salary and send them to the insurer effectively tenders payment of those premiums to his employer. Because the employer is an agent of the insurer for purposes of premium collection, the insurer cannot cancel coverage if the employer's negligence prevents it from receiving the premiums. Therefore, defendant's motion for summary judgement is DENIED and a question of fact regarding whether plaintiff properly requested a second accident policy naming his daughter as beneficiary remains to be decided.

CONCLUSION

The Court GRANTS plaintiff's request for trial by jury and DENIES defendant's motion for summary judgement.

So ORDERED.

ON RECONSIDERATION

Defendant's motion for summary judgment presented the question of whether an insurer may cancel an insured's/employee's coverage under an existing group policy for non-payment of premiums when that employee attempts to pay his premiums but his employer fails to continue payment to the insurer. The court found that the answer to that question depended on whether the employer was the agent of the insurer for purposes of premium collection. In its motion for reconsideration, defendant confuses these two questions. It argues that cases applying Georgia law directly address the first question. Brief in Support of Defendant's Motion for Reconsideration at 3 (hereinafter Defendant's Brief). They do not. These cases speak only to the question of agency, and do so in contexts other than attempted payment of premiums under valid group policies. *See, e.g., Thigpen v. Metropolitan Life Insurance Co.,* 57 Ga.App. 405, 195 S.E. 591 (1938) (concerns agency question in context of proof of loss, not deduction of premiums).

■ As defendant correctly notes, *Dawes Mining Co. v. Callahan,* 246 Ga. 531, 272 S.E.2d 267 (1980) is the leading case explaining the agency roles played by an employer under a group insurance policy. As the *Dawes* court stated:

[T]he employer who obtains a group insurance policy covering its employees is the agent of the insurance company for every purpose necessary to make effective the group policy, and thus the insurance company has imputed knowledge of facts which the company knows.... However, in selecting a group insurer, in selecting coverages to be afforded by the insurer, the employer is negotiating with the prospective insurer; there is no contract in force and the employer cannot be the agent of the insurer. It has been said that " 'When procuring the policy [and] obtaining applications of employees ... employers act not as agents of the insurer but for their employees or for themselves.' "

246 Ga. at 534, 272 S.E.2d at 269 (citations omitted). According to *Dawes,* issuance of the group insurance policy is the "dividing line" between situations where an employ-

er is the agent of its employees and those where it is the agent of the insurer: once the contract is in force, the employer is the agent of the insurance company "for every purpose necessary to make effective the group policy." *Id.*

Defendant, however, argues that the above quoted passage has the opposite meaning: "The [*Dawes*] Court observed that when it comes to matters of concerning (sic) the general administration of the policy, the employers act as agents of the employees." Defendant's Brief at 4. As the above quotation illustrates, however, *Dawes* in no way suggests that employers are agents of their employees *after* the policy comes into effect.

Instead of the pre-contract/post-contract distinction plainly suggested in *Dawes,* defendant proposes the following "dividing line" between situations where an employer is the agent of its employees and those where it is the agent of the insurer: "[an employer may be the agent of the insurer in] situations in which the group insurer relied upon the employer for purposes of knowing who qualified as employees for purposes of inclusion in the insured group." [1] Defendant's Brief at 5. Defendant proposes no conceptually meaningful reason why an employer should be the agent of the insurer in the above situation but not in any other post-contract circumstances.

Locating the "dividing line" at the point of contract formation, however, not only comports with *Dawes* but also makes sense. Once the group insurance policy is in place, the employer performs administrative tasks normally done by the insurer: it collects premiums, monitors the status of insureds and provides the means for insureds to cancel or modify their coverage. There is no reason why an employer should be the agent of the insurer when perform-

ing one of these essentially similar functions but not when performing the others.

Defendant also relies on *Thigpen v. Metropolitan Life Insurance Co.,* 57 Ga.App. 405, 195 S.E. 591 (1938) and *Lancaster v. Travelers Insurance, Inc.,* 54 Ga.App. 718, 189 S.E. 79 (1936), which suggest that an employer is the agent of its employees after a group insurance policy comes into effect:

> When procuring the policy, obtaining applications of employees, taking pay-roll deduction orders, reporting changes in the insurance group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves.

*Thigpen,* 57 Ga.App. at 407, 195 S.E. 591 (quoting *Boseman v. Connecticut General Life Insurance Co.,* 301 U.S. 196, 204–05, 57 S.Ct. 686, 690–91, 81 L.Ed. 1036 (1936) (applying Pennsylvania law)).

In *Cason,* however, the Georgia Court of Appeals specifically identified these cases and chose not to follow them. 91 Ga.App. at 328, 85 S.E.2d at 572. Instead, the court followed *Equitable Life Assurance Society v. Florence,* 47 Ga.App. 711, 171 S.E. 317 (1933), holding that "the employer, in doing such acts as are necessary ... to keep the policy of force and to effectuate its purposes, is the agent not of the employees but of the insurance company." *Cason,* 91 Ga.App. at 328, 85 S.E.2d at 572. Subsequent cases have followed *Cason,* not *Thigpen* or *Lancaster.* See, e.g., *Piedmont,* 108 Ga.App. at 237, 132 S.E.2d at 530; *Pilot Life Insurance Co. v. McCrary,* 103 Ga.App. 549, 550, 120 S.E.2d 134, 135 (1961). Therefore, courts applying Georgia law appear to have rejected *Thigpen* and *Lancaster* inasmuch as they hold that employers are agents of their employees rath-

---

**1.** Defendant correctly notes that *Piedmont Southern Life Ins. Co. v. Gunter,* 108 Ga.App. 236, 132 S.E.2d 527 (1963) and *Cason v. Aetna Life Ins. Co.,* 91 Ga.App. 323, 85 S.E.2d 568 (1954) both held an employer to be the agent of the insurer for this specific purpose. Neither case, however, suggests that this is the only

situation in which an employer is the agent for the insurer. Indeed, the *Piedmont* court actually states that "an employer who obtains a group insurance policy covering its employees is the agent of the insurance company for every purpose necessary to make effective the group policy." 108 Ga.App. 237, 132 S.E.2d at 530.

er than agents of insurers in administering group insurance policies.[2]

In sum, all of the most recent authority supports the court's original holding: so long as a valid group insurance contract is in effect, an employer "is the agent of the insurance company for every purpose necessary to make effective the group policy," including the collection of premiums, "and thus the insurance company has imputed knowledge of facts which the employer knows." *Dawes*, 246 Ga. at 534, 272 S.E.2d at 269.

## CONCLUSION

The court DENIES defendant's motion for reconsideration.

So ORDERED.

---

**2.** Indeed, *Thigpen* is inconsistent with *Dawes*, which expressly adopts the standard of *Cason* and its progeny that "the employer who obtains a group insurance policy covering its employees is the agent of the insurance company for every purpose necessary to make effective the group policy." 246 Ga. at 534, 272 S.E.2d at 269. This statement directly contradicts the statement in *Thigpen* that "in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves." 57 Ga.App. at 407, 195 S.E. 591.