**Leisa W. McGINNIS, f/k/a Leisa W. Glaze Plaintiff,**

v.

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. CIV.A. 1:98CV3524TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 29, 1999.

Wade Marvin Crumbley, Jason T. Harper, Crumbley & Crumbley, McDonough, GA, for Leisa A. McGinnis, plaintiff.

Douglas Neil Campbell, Edward H. Nicholson, Jr., McGuire Woods Battle & Boothe, Atlanta, GA, for Allianz Life Insurance Company of North America, defendant.

### ORDER

THRASH, District Judge.

This is an action to recover benefits pursuant to a group disability insurance policy. At issue is the applicability of an exclusion for pre-existing conditions that result in disability within 12 months of the effective date of the policy. Both parties have moved for summary judgment. For

the reasons set forth below, the Court will deny the Plaintiff's Motion for Summary Judgment [Doc. 13] and grant the Defendant's Motion for Summary Judgment [Doc. 14].

## I. BACKGROUND

Plaintiff Leisa McGinnis worked as a secretary for the Federal Bureau of Investigation in Atlanta, Georgia for 19 years. Ms. McGinnis' health problems began in 1988, with the discovery of a brain tumor. Following surgery, she received steroid treatments which caused deterioration in her hips and shoulders. After her surgery and follow-up treatment for the brain tumor, Ms. McGinnis returned to work. By 1995, however, she realized that she was facing the prospect of retirement on disability within a few years. Concerned that her federal employees disability retirement would not provide her enough support, Ms. McGinnis applied for supplemental disability coverage from Allianz. In the application, Ms. McGinnis disclosed her prior medical history. Aware of her past health problems, Allianz issued Ms. McGinnis policy number 08784001 with coverage effective December 10, 1995. Ms. McGinnis paid all premiums owed under the policy when due.

The Allianz policy contained an exclusion for pre-existing conditions. It is undisputed that Ms. McGinnis' brain cancer and the complications later ensuing fall within the policy's definition of pre-existing conditions. One exception exists to the pre-existing condition exclusion. For "total disability" that begins more than 12 months after the effective date of the policy, the exclusion does not apply. The policy defines "total disability" as being "completely unable, due to Sickness or Injury or both, to perform each and every duty of (one's occupation)." [Doc. 14, Exh. A]. The definition also requires that the insured "is not in fact engaged in any occupation for wage or profit." *Id.*

Two weeks short of a year from the date the policy became effective, Ms. McGinnis became unable to work. On November 17, 1996, she submitted an application for disability retirement under the Civil Service Retirement System. It is stipulated that: "As of November 17, 1996, and continuing without interruption to the present, Mrs. McGinnis has been unable, due to sickness, to perform her own occupation or any gainful occupation for which she is reasonably fitted by education, training or experience." [Doc. 14, Stipulations, par. 25]. Her last day present at work was November 22, 1996. On November 25, 1996, Ms. McGinnis' employer granted her request for leave. On the sponsor's statement form submitted with her application for civil service disability retirement, the "approximate date (Ms. McGinnis') attendance stopped or became unacceptable" was listed as November 25, 1996. From November 25, 1996, until February 25, 1997, Ms. McGinnis was on leave with pay as a result of paid leave donated by other federal employees.[1] Her application for civil service disability retirement was approved by the United States Office of Personnel Management on February 12, 1997, effective February 26, 1997. Effective February 25, 1997, Ms. McGinnis was placed on sick leave until her accumulated sick leave was exhausted on April 24, 1997. On this date she was removed from the roll of federal employees. Thus, through donated leave and accumulated sick leave, Ms. McGinnis received her normal salary until April 24, 1997, well outside the one year window from the effective date of her policy. In January, 1997, Ms. McGinnis submitted an application for supplemental disability retirement benefits under her policy. Allianz, through a third-party administrator, denied the application based on the pre-existing condition exclusion. This suit followed. If her total disability is viewed as

---

1. In 1988, when Ms. McGinnis first began her battle with cancer, fellow Department of Justice employees generously donated leave to her pursuant to the department's Voluntary Leave Transfer Program. Ms. McGinnis used this donated leave until it was exhausted in February, 1997, at which point she began using her sick leave.

beginning when she left the payroll, Ms. McGinnis is entitled to receive the benefits from the policy. If her total disability is viewed as beginning on her last day able to work, she is not entitled to receive any benefits due to the pre-existing condition exclusion in her policy.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

This case poses a different question than most cases arising from disability insurance. Here, both parties concede the insured is disabled. The question is whether she was engaged in an occupation as long as she was paid even though she was unable to work. The answer depends on the interpretation of the total disability clause in the Allianz policy. The clause precludes recovery for disability caused by a pre-existing condition if the insured becomes unable to work within a year of the policy becoming effective. Essentially, the interpretational dispute is this: whether receiving pay amounts to being engaged in an occupation in the context of a disability benefits insurance policy. Ms. McGinnis contends that she remained engaged in her occupation until April 24, 1997, when she ceased being a federal employee. Allianz contends that Ms. McGinnis ceased being engaged in her occupation on November 17, 1996, when she became unable to continue performing the duties of her position. This case comes before the Court pursuant to diversity jurisdiction. Therefore, Georgia law controls the interpretation of the policy. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *General Telephone Co. of the Southeast v. Trimm*, 252 Ga. 95, 311 S.E.2d 460 (1984) (applying traditional rule of *lex loci contractus* in determining which state law applies to contractual dispute).

Like most disputes involving insurance coverage, the Court's review must begin with the language of the policy. The Allianz policy contained an exclusion for pre-existing conditions resulting in disability within one year following the effective date of coverage. The policy stated:

> No Monthly Disability Benefits will be paid for any disability which is within one of the following Exclusions, or which results directly or indirectly from one of the following Exclusions:
>
>   *    *    *    *    *    *
>
> Pre-existing Conditions: A pre-existing condition is any condition that required medical treatment, consultation or expense during the three months immediately before the Insured person's Effective date of insurance. This Exclusion will not apply to Total Disability beginning after the date the person has been insured under the Group Policy for 12 consecutive months.

[Doc. 14, Stipulations, Exh. A]. It is undisputed that Ms. McGinnis' disability falls within this definition of pre-existing conditions. It is also undisputed that she was disabled in the sense that she could not do her job as of November 17, 1996, less than 12 months after the effective date of her coverage.

One exception exists to the pre-existing condition exclusion. For "total disability"

that begins more than 12 months after the effective date of the policy, the exclusion does not apply. "Total Disability" is defined by the Certificate of Insurance and the Master Policy as follows:

> TOTAL DISABILITY OR TOTALLY DISABLED: means that the Member is completely unable, due to Sickness or Injury or both, to perform each and every duty of (1) his own occupation during the first 26 months of disability; and (2) any gainful occupation for which he is reasonably fitted by education, training, or experience after the first 26 months of disability and that he is not in fact engaged in any occupation for wage or profit.

[Doc. 14, Stipulations, Exh. A, p. 11]. Ms. McGinnis' policy became effective December 10, 1995. As of November 17, 1996, Ms. McGinnis was unable to do her job or any job for which she was suited by education, training or experience. As noted above, however, she continued to receive her salary until April 24, 1997. Her salary continued through leave time donated by co-workers and then through her accumulated sick leave.

█  Absent the total disability after 12 months coverage exception, the parties agree that the pre-existing condition exclusion precludes Ms. McGinnis' recovery of the supplemental disability benefits provided by the policy. It is undisputed that her disability results from the brain tumor and complications therefrom. That the brain tumor required medical treatment, consultation or expense during the three months before the December 10, 1995 effective date of the policy is also undisputed. The parties disagree about whether the total disability exception applies to the exclusion. Ms. McGinnis contends that her total disability as defined by the policy began more than 12 months after the effective date of coverage. The stipulations agreed to by both parties, however, contradict Ms. McGinnis' position. Ms. McGinnis stipulated that "[a]s of November 17, 1996, and continuing without interruption to the present, [she] has been unable, due to sickness, to perform her own occupation or any gainful occupation for which she is reasonably fitted by education, training or experience." [Doc. 14, Stipulation 25]. Nevertheless, Ms. McGinnis contends that she does not meet the second element necessary for the total disability exclusion to preclude recovery. In addition to being unable to work due to a medical condition, the clause also requires "that [s]he is not in fact engaged in any occupation for wage or profit." Thus, Ms. McGinnis interprets the clause as having a medical element and an economic element. Ms. McGinnis contends the language "in fact engaged in any occupation for wage or profit" includes someone on leave and receiving her full salary. Ms. McGinnis claims these words are not specifically defined in the policy, and that the policy is otherwise silent as to whether receiving leave pay satisfies the language. She contends that the policy is ambiguous and that it should be construed in her favor. Under Georgia law, language in insurance policies must be construed liberally in favor of the insured. *Nationwide Mut. Fire Ins. Co. v. Tomlin,* 181 Ga.App. 413, 352 S.E.2d 612 (1986).

Allianz contends that Ms. McGinnis was not engaged in an occupation after November 17, 1996; and that the receipt of donated leave from co-workers and sick leave from her employer does not entitle Ms. McGinnis to take advantage of the exception to the pre-existing condition exclusion. Moreover, Allianz contends that Ms. McGinnis' interpretation of the policy language "in fact engaged in any occupation for wage or profit" focuses on "wage or profit" to the exclusion of "occupation." Allianz contends such an interpretation is contrary to the ordinary rules of construction generally applicable to all contracts. *Hartford Cas. Ins. Co. v. Banker's Note, Inc.,* 817 F.Supp. 1567, 1571 (N.D.Ga. 1993), *aff'd,* 53 F.3d 1287 (11th Cir.1995). Allianz argues that the Court must consider the ordinary and legal meaning of words employed in the contract. If the language is plain and unambiguous, the contract must be enforced as written.

*Garmany v. Mission Ins. Co.*, 785 F.2d 941, 946–47 (11th Cir.1986); *Canal Ins. Co. v. Wilkes Supply Co.*, 203 Ga.App. 35, 416 S.E.2d 105 (1992).

■ Despite the sympathy the Court feels for Ms. McGinnis' circumstance, the Court must apply the law of Georgia as it finds it. Ms. McGinnis was aware of the terms of the insurance when she purchased the policy in December, 1995. The policy clearly excluded coverage from disability resulting from a pre-existing condition. Ms. McGinnis realized that the conditions from which she suffered constituted a pre-existing condition under the terms of the policy. The pre-existing condition exclusion precludes recovery unless the "total disability" began 12 months after the policy became effective. The policy defines "total disability" as being "completely unable, due to Sickness or Injury or both, to perform each and every duty of . . . [her] occupation . . . and . . . that [s]he is not in fact engaged in any occupation for wage or profit." [Doc. 14, Exh. A, Certificate of Insurance, p. 7; Master Policy, p. 11]. Under the ordinary and legal meaning of the words, the phrase "wage or profit" modifies "occupation." Thus, the language bespeaks an occupation and incumbent duties rather than remuneration alone. The language is plain and unambiguous. In applying for and paying premiums for the policy, Ms. McGinnis accepted the risk that she would become disabled due to a pre-existing condition before the 12 month waiting period expired. Unfortunately, she lost the wager.

The Georgia case law in this area supports the position taken by Allianz. In *John Hancock Mut. Life Ins. Co. v. Frazer*, 194 Ga. 201, 20 S.E.2d 915 (1942), a life insurance policy provided for waiver of premiums if the insured "became wholly disabled . . . and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit." The insurer in that case argued that the insured was not disabled. The insurer argued that the insured did not meet the definition of total disability because he, like Ms. McGin-

nis, had continued to receive a monthly sum equal to his prior salary. The court held that:

> In such case a recovery for total and permanent disability would be authorized, notwithstanding the insured's employer, a corporation, continued to pay him a monthly sum equal to his former salary, where it appeared that he owned more than ninety-eight per cent of the capital stock of such corporation, and under the evidence as a whole the jury were authorized to find that such payments by the employer, though made nominally as salary, were intended as a gratuity, or were based upon some theory pertaining to such stock ownership, and were not in fact for services rendered. As was held by the Court of Appeals in the instant case, "the question for final determination is, *not whether the employee was kept on the payroll after the injury or sickness,* but whether he was totally disabled within the meaning of the policy."

*Id.* (emphasis added). Thus, the Georgia Supreme Court rejected the argument that keeping an employee on the payroll after she becomes totally disabled is evidence that total disability has not yet occurred where the policy requires that the insured "is not in fact engaged in any occupation for wage or profit."

The Court's construction of the policy in this case also comports with the normal understanding of the word "occupation." In *New York Life Ins. Co. v. Thompson*, 50 Ga.App. 413, 178 S.E. 389 (1935), the Georgia Court of Appeals interpreted a disability policy defining "total disability" to be "whenever the insured 'is wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit.' " The court held that "[c]ertainly it cannot be contended that the occupation of 'going to school' was an occupation for remuneration or profit." *Id.* If going to school, studying and carrying out the other associated duties of a student does not

constitute "occupation for remuneration or profit," this Court does not believe the Georgia courts would view someone who does not come into the office, but remains on "leave time" as "engaged in any occupation for wage or profit." As an aside, the Court does not read the *Thompson* case as turning on the receipt of compensation. In *Thompson,* the issue was whether the insured, a part-time student and farmer, could recover under his disability insurance. The court went on to write that "should the evidence disclose that the insured did actually *perform the substantial duties* of a gainful occupation...he would not be entitled to recover (because he would not be disabled)." *Id.*

The decision of the Georgia Court of Appeals in *Cason v. Aetna Life Ins. Co.,* 91 Ga.App. 323, 85 S.E.2d 568 (1954) also supports the Court's construction of the policy. In *Cason,* a fireman purchased additional life insurance while on sick leave. After purchasing the insurance, he died without returning to work. The insurer denied coverage based on a clause in the policy requiring that an employee "applying for insurance...before the date of their eligibility...would be insured from the date of their eligibility *if then performing the duties of their occupations.*" The court found that "[t]he insured was not regularly performing the duties of his occupation (when he purchased the additional insurance while on sick leave), nor did he at any time thereafter until his death perform them." *Id.* Because the insured was not "regularly performing the duties of his employment" when he purchased the additional insurance, he was not eligible for the increased benefit it afforded. *Id.* Similarly, Ms. McGinnis was not regularly performing her employment duties after November 17, 1996.

The Court cannot find, nor has Ms. McGinnis cited, any support for the proposition that remaining on the payroll alone constitutes being engaged in an occupation. To the contrary, Georgia law views occupation, in the context of disability policies requiring an inability to engage in occupation for work or profit, as perform-

ing the duties of one's position, not merely receiving compensation. While the Court expresses sympathy for Ms. McGinnis' circumstance, it must apply the controlling law of Georgia. Accordingly, Allianz is entitled to summary judgment. The Court is mindful that a contrary result would mean that insurance companies such as Allianz would be able to profit from the generosity of fellow employees or employers providing sick leave with pay to deny disability benefits to other policy holders who are unable to work. In other words, the restricted concept of disability which Ms. McGinnis seeks would in the long term be highly detrimental to the broader universe of disability insurance policyholders.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Summary Judgment [Doc. 13] and GRANTS Defendant's Motion for Summary Judgment [Doc. 14].