Perry B. **MORRIS**

v.

The **MUTUAL BENEFIT LIFE INSUR- ANCE COMPANY.**

Civ. No. 9878.

United States District Court
N. D. Georgia,
Atlanta Division.

July 29, 1966.

Amendment to Order Aug. 19, 1966.

Cohen, Kohler, Barnwell & Chambers, Atlanta, Ga., for plaintiff.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

SIDNEY O. SMITH, Jr., District Judge.

This is a suit in which plaintiff as beneficiary seeks to recover $10,000.00, the amount of the proceeds of a group life insurance policy issued by the defendant insurance company, plus $2,500.-00 penalty, and $3,000.00 attorney's fees. The plainiff contends that the deceased, Hyman Morris, was covered under an employee group life insurance policy issued by defendant. Defendant contends the deceased was not within the coverage of the policy. Both sides have moved for summary judgment, and the relevant facts are not in dispute.

The insurance policy in question is a one year renewal term policy known as Employee Group Life Certificate Policy Number G 4513–1. This employee group policy pays $10,000.00 upon the death of each covered officer or assistant manager of Morris-Fallaize Insurance, Inc., and its associate agency, the Morris Insurance Agency. The relevant portions of the policy are as follows:

Section A 1(a) of the policy states that all employees are the generally eligible group, and that the covered class within that group includes:

"b. Each active, full-time employee, except any such person employed on a temporary basis.

For the purposes of this policy, any person who works less than 30 hours per week shall not be considered a full-time employee."

Section A 2 requires 30 days continuous service for persons becoming active, full-time employees after the effective date of the policy, but provides that "no service requirement shall be applicable for any such person who is in an eligible class on the effective date of the policy."

Section A 3 provides that the insurance coverage be effective on the effective

date of the policy, which was December 7, 1964.

Section A 4 provided:

"The insurance for a member of the general group who otherwise fulfills all the requirements of this section will not take effect at the time described in Section A3 unless he is actively at work on a full-time basis at his usual place of business on that day. If he is not actively at work on a full-time basis at his usual place of business on that day, the insurance will become effective on the first day thereafter upon which he returns to active work on a full-time basis at his usual place of business."

The events leading up to the making of this policy show that Morris-Fallaize Insurance, Inc. applied for more group insurance on their employees. The company with which they had a policy was unable to insure them past their existing limits, and contacted the present defendant insurance company as a supplemental insurer. As a result, on December 7, 1964, a group insurance representative of the defendant was in the office of Perry B. Morris at Morris-Fallaize, for the purpose of working out the coverage of this policy on that day. The policy application was executed by the plaintiff Perry Morris for the policyholder, Morris-Fallaize, and was also executed by Perry Morris as agent for the defendant in connection with the application. The commission on the policy was paid to the company, Morris-Fallaize.

The policy was accepted by the defendant, and issued on January 18, 1965, effective as of December 7, 1964, the date of the application.

The deceased, Hyman B. Morris, was engaged in the insurance business for over 30 years. With his brother Perry, he operated a general insurance business, the Morris Insurance Agency, until September, 1961. He then organized and became president of Morris-Fallaize Insurance, Inc. He continued up to his death to operate Morris Insurance Agen-cy with his brother and to act as President of Morris-Fallaize Insurance, Inc. His duties in these two capacities occupied on an average of 40 hours per week. They were primarily administrative in nature, but he also consulted with his business associates, James Fallaize and Perry Morris, and made calls on prospects and clients. He was an active member of the two insurance businesses, keeping regular office hours, consulting and meeting with business associates and clients, proposing and writing business memorandum and making calls. This schedule, with few exceptions, continued until Monday, November 24, 1964. At that time he entered Emory Hospital for tests to determine the cause of severe and recurring pains in his lower right chest, for which he had previously been examined by his physician on October 28 and November 17, 1964. At the time of his hospitalization, he was weak and had lost weight as the result of a loss of appetite. The physicians were unable to reach a definite conclusion as to the cause of Hyman's condition. However, after 10 days in the hospital, Hyman had regained strength and appetite, and had begun to carry on business activities from the hospital. He was released on Thursday, December 3, 1964, with permission from his physician to do anything he felt like doing and within hours of his discharge, he had returned to his office and his regular duties. He worked from 2:00 P.M. to 4:30 P.M. on the day of his discharge; from 9:00 A.M. to 4:00 P.M. on Friday, December 4, 1964; a regular half-day from 9:00 A.M. to 12:15 P.M. on Saturday, December 5, 1964; and from 9:00 A.M. to 4:00 P.M. on Monday, December 7, 1964, the effective date of the insurance policy. He worked from 9:00 A.M. until about 2:00 P.M. on Tuesday, December 8, 1964, at which time he was again stricken with an attack of severe pain while in a conference in the Bank of Georgia Building with a Mr. J. R. Efird. He was again admitted to Emory Hospital on December 9, 1964. After exploratory surgery on December 17, 1964, his condition was diagnosed as hepatoma or cancer of the liver. He was finally discharged from

the hospital on December 28, 1964, and died from hepatoma on April 3, 1965.

The plaintiff, Perry Morris, learned of Hyman's condition around December 17, 1964, and Hyman learned of his own condition around December 24, 1964.

There are three issues in this case. First, whether on Monday, December 7, 1964, Hyman P. Morris was an "active, full-time employee" within the meaning of the policy.

Second, if Hyman Morris was otherwise covered, whether the knowledge on the part of plaintiff beneficiary Perry Morris of the physical condition of Hyman prior to January 18, 1965, the date the policy was issued, is a legal bar to Perry's recovery in this suit.

Third, whether the defendant insurance company's refusal to pay the claim was in bad faith under the provisions of Georgia Code Anno. § 56–1206, so as to make defendant liable for a $2,500.00 penalty and attorney's fees.

(1) The first issue is whether Hyman P. Morris was an "active, full-time employee" within the meaning of the policy on Monday, December 7, 1964.

Under the policy provisions there are two conditions to be met before an employee qualified for coverage. First, he had to be an "active, full-time employee" (§ [A 1 (b) of the policy]) and second he had to be "actively at work on a full time basis at his usual place of business" on the effective date, Monday December 7, 1964 (§§ A 3 and A 4 of the policy).

There can be no dispute that the deceased was "actively at work * * * at his usual place of business" on that day. This issue revolves around the phrase "full-time"—whether, on the facts, Hyman Morris was a "full-time employee" and at work on a "full-time basis" on December 7, 1964, within the meaning of the policy.

The defendant relies on § A 1(b) of the policy, which states that "For the purposes of this policy, any person who works less than 30 hours per week shall not be considered a full-time employee."

Defendant points out that the deceased did not work over 30 hours in the week of his return to work, and according to the statement of Dr. Galambos, was totally disabled after November 25, 1964.

The plaintiff relies on § A 2 of the policy, which states that "no service requirement shall be applicable for any such person who is in an eligible class on the effective date of this policy."

Plaintiff contends that the deceased normally worked over 30 hours per week, and was therefore a full-time employee, and that to require that he have worked over 30 hours on the particular week he was stricken would be in effect to apply a service requirement under the guise of the temporary employee provision [§ A 1(b)].

Under Georgia law, a contract of insurance is construed to carry out the intent of the parties. Georgia Code Anno. § 20–702. However, where there are two inconsistent provisions, in a group insurance contract, the provision most favorable to the insured will be adopted, e. g. McLendon v. Carolina Life Insurance Co., 71 Ga.App. 557, 31 S.E.2d 429 (1944). Where provisions are ambiguous, are subject to doubt, or are reasonably susceptible of two meanings, the interpretation most favorable to coverage of the insured will prevail. American Indem. Co. v. Davis, 155 F.Supp. 47 (M.D.Ga.1957) ; Continental Casualty Co. v. Robertson, 245 F.2d 604 (5th Cir. 1957) ; Thornton v. Traveler's Ins. Co., 116 Ga. 121, 126, 42 S.E. 287 (1902). Thus, upon the undisputed facts, if this contract has two provisions in apparent conflict, or if a provision is susceptible of two reasonable interpretations, this issue must be decided in favor of the plaintiff.

The provision in § A 1(b) of the policy, defining an "active, full-time employee" in terms of 30 hours work per week is plainly intended to draw a line between the full-time and temporary employees mentioned in the previous section [Section A 1(a)]. As such, this 30 hour provision must be applied, not on a week by week basis, but on an average

basis to determine whether an employee is temporary or whether he normally and regularly worked over 30 hours per week. See Harlan v. Washington National Ins. Co., 388 Pa. 88, 130 A.2d 140. Certainly, it would be unreasonable to assume that the parties intended a contract whereby any regular employee would be excluded during any week in which he did not work 30 hours because of illness, vacation, etc.

The case of Augusta v. John Hancock Mutual Life Ins. Co., 11 Misc.2d 111, 170 N.Y.S.2d 908, is informative. The policy in that case contained no requirement that the employee be at his "usual place of business" on the effective date of coverage. However, it held that an employee who performed his duties of making decisions and giving instructions as to current business problems from his hospital bed, was "actively at work as a full time employee", even though he died without ever returning to the place of business. See also Equitable Life Assur. Society of United States v. Wortham, 67 F.2d 721 (7th Cir. 1933). Compare, Chazen v. United States Life Insurance Co., 24 A.D. 2d 741, 263 N.Y.S.2d 490.

■ Here, there is no doubt that the deceased normally worked more than 40 hours a week in the course of his regular employment up to November 24, 1964. After a 10-day stay in the hospital, he returned to his normal duties at an undiminished pace, that would have averaged about 38 hours per week, had he not been stricken on December 8, 1964, in the middle of a business conference. There is no evidence of an intent on his part to become a temporary employee, such as retiring from his position as president. The fact that he was away from work for 10 days beginning November 24 does not change his status into that of a temporary employee any more than if it had occurred two or three months earlier.

To require the deceased to have been at work for 30 hours during the particular week of his attack would be in effect to add a condition on coverage not contained in the policy.

■ The fact that the attack occurred the day after the effective date of the policy is immaterial and cannot be a basis for denial of coverage, since there is no service requirement under Section A 2. As an active full-time employee on the date of the policy, the deceased was thereafter covered. The fact that he had an attack requiring him to cease work only one day after the effective date is, of course, no different than if the attack had occurred months later. Compare Elsey v. Prudential Ins. Co. of America, 262 F.2d 432 (10th Cir. 1958) where employee was not at work on effective date and became fatally ill the next day, and Aetna Life Ins. Co. v. Padgett, 49 Ga. App. 666, 176 S.E. 702.

The testimony of one physician at a later date—after the diagnosis of cancer and his subsequent death—that Hyman had been "totally disabled" as of October or November, 1964, does not change the fact that he continued to perform substantially all his customary duties until December 8, 1964, in spite of the recurring pain. See, Cato v. Aetna Life Ins. Co., 164 Ga. 392, 138 S.E. 787; Metropolitan Life Ins. Co. v. Johnson, 66 Ga.App. 520, 18 S.E.2d 35.

Therefore, the deceased met both conditions for coverage. He was an "active, full-time" employee, [§ A 1(a) and (b)] and was at work as such on the effective date of the policy. [§ A 3]

(2) As to the second issue, the defendant has argued that this policy of group insurance was not binding on it until the date of issuance, January 18, 1965, even though the effective date was set in the policy and policy application at December 7, 1964. As a result, the defendant argues, it could have cancelled coverage if it had known of the condition of the deceased and plaintiff's failure as its agent, to notify it of this fact bars his recovery.

■ Although there is no existing rule as to this question, the better rule on the present facts is that the knowledge of the plaintiff-beneficiary of Hyman's physical condition prior to the date of issuance of the policy, but subsequent to the effective date of the policy coverage as provided in the application and the

policy is not a legal bar to recovery under a group insurance policy.

Of primary importance is the fact that the physical condition of the employees was immaterial to the group coverage, except to the extent that they were required to be active-full-time employees at work at their regular place of business on December 7, 1964. If they met this condition, as did the deceased, they qualified, without the defendant company making inquiry into their physical condition or insurability as under an individual life insurance policy. Such a failure to inquire by requiring no evidence of insurability of any employee further supports the conclusion that the physical condition of the employee is not material to the coverage. See United States Fidelity & Guaranty Co. v. Newton, 37 Ga.App. 70, 139 S.E. 365; Guaranty Life Ins. Co. v. Johnson, 60 Ga.App. 292, 3 S.E.2d 773; Peninsular Life Ins. Co. v. Screen, 100 Ga.App. 670, 112 S.E.2d 174; Gilham v. National Life & Acc. Ins., 104 Ga.App. 459, 122 S.E.2d 164.

Therefore, there can be no failure on the part of anyone to inform the defendant as to something into which it did not inquire and which is immaterial to the statistical insurance risk involved. The rates charged in this policy are based on the facts of "active, full-time employment" on a certain date and age. That one who did in fact meet these requirements unknowingly, was fatally ill at the time cannot be made the basis for later denial of a claim. To do so, would be to allow the imposition of a condition on coverage which is not contained in the policy as written or proposed.

The "agency" upon which the defendant relies in arguing that the plaintiff owed a duty to inform it of the condition of the deceased is not an agency in the usual legal sense. The plaintiff was not a regular agent of defendant. He did not get the commissions paid on this policy. Instead he was actually acting on behalf of Morris-Fallaize, and this company received the commissions. In group insurance cases, a question of agency is involved, but it involves the employer or officer of the corporate employer acting as the insurer's agent for the purpose of doing whatever acts are necessary to effectuate the coverage of the policy, for the benefit of the employees. See, e. g. Cason v. Aetna Life Insurance Co., 91 Ga. App. 323, 85 S.E.2d 568; Neider v. Continental Assur. Co., 213 La. 621, 35 So.2d 237, 2 A.L.R.2d 846. Here, an additional factor is involved since the agent-employer is also the beneficiary. However, as beneficiary he owes no more duty to the insurer than non-beneficiary-agent employers do in group insurance cases. An agent-employer would not be required to inform an insurer of a fact not relevant to normal group coverage whether he was also a beneficiary or not.

In any event, it is doubtful the defendant insurer could have cancelled the group coverage even if it had known of the insured's condition. It would appear that in such a group insurance policy as this, the defendant would not have been successful in denying liability. See Pilot Life Insurance Co. v. McCrary, 103 Ga. App. 549, 120 S.E.2d 134; Equitable Life Assur. Soc. v. Florence, 47 Ga.App. 711, 171 S.E. 317; United States Fidelity & Guaranty Co. v. Newton, 37 Ga.App. 70, 139 S.E. 365.

The intent of the parties as reflected in the policy terms and the nature of group insurance would form a firm basis for a like conclusion here.

The plaintiff has cited many cases involving regular life insurance, culminating with New York Life Ins. Co. v. Whitfield, 113 Ga.App. 266, 147 S.E.2d 829 (1966), for the proposition that acceptance of an application for insurance and premium payment binds the insurance company to coverage contained in the application. The defendant has cited a greater number of cases, also involving regular life insurance, culminating with Loveless v. Life & Casualty Insurance Co. of Tenn., 113 Ga.App. 315, 147 S.E. 2d 835 (1966) for the proposition that acceptance of an application for insurance and payment of premium does not bind the insurance company to coverage contained in the policy prior to issue.

Although the great difference in the risk involved between individual life and group insurance makes these cases informative at best, the important question in all these cases is the intent of the parties, as reflected in the terms of the policy application, as to the time the coverage should become effective. In the present case, it is apparent that December 7, 1964, was the date at which both parties intended the policy and the coverage to be effective. This is supported by the nature of group insurance in which the date of coverage or date certain at which employees qualify for coverage is of primary importance, as insurability is determined thereby. In this group policy, the intent of the parties was to bind the insurer to coverage as of that date—December 7, 1964—is evident throughout the policy. After having issued the policy and accepted premium payment, the defendant cannot now avoid liability on the basis of a physical condition which became known after the coverage date. Therefore, plaintiff's motion for summary judgment as to the $10,000.00 amount of value of the policy is granted.

(3) As to the third issue of penalty, Georgia Code Anno. § 56–1206 provides: "In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made * * and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 25 per cent of the liability of the insurer for the loss and all reasonable attorney's fees for the prosecution of the case against the insurer. * * * "

■ Where any reasonable grounds exists for contesting a claim, there can be no award based on bad faith. Lanier v. American Casualty Co. of Reading, Pa.,

226 F.Supp. 630 (N.D.Ga. 1964). Unless there is evidence of a frivolous and unfounded denial of liability, no recovery may be had under this provision. Pearl Assurance Co., Ltd. v. Nichols, 73 Ga. App. 452, 37 S.E.2d 227 (1946). The purpose of this provision was not to penalize an insurer for appealing to the courts where there are questions concerning an insurance contract which are sufficiently doubtful to justify adjudication. Security Ins. Co. v. Jackson, 54 Ga.App. 131, 187 S.E. 234 (1936).

■ In the present suit, there is no evidence that the defendant's denial of the claim was frivolous and unfounded or without reasonable grounds. Although the relevant facts in this case were not in dispute, the preceding opinion makes it plain that the legal consequences of these facts were sufficiently doubtful to allow the defendant to request an adjudication without being penalized. The affidavit of defendant's Group Claims Manager, Walter A. Sivek, further indicates that defendant's denial was not frivolous and unfounded.

Therefore, defendant's motion for summary judgment dismissing plaintiff's claim for penalty and attorney's fees is granted.

It is so ordered.

## AMENDMENT TO ORDER

The order of this Court dated July 28, 1966, granting plaintiff's motion for summary judgment in the above case, is amended to grant plaintiff's prayer for the sum of $925.56, as interest at 7% per annum on the principal amount of $10,000.00 from April 3, 1965, to the date of judgment.

It is so ordered.