894 F.2d 1555
 UNITED OF OMAHA LIFE INSURANCE COMPANY,
Plaintiff-Counter-Defendant-Appellee,
v.
SUN LIFE INSURANCE COMPANY OF AMERICA,
Defendant-Counter-Claimant-Appellant.
 No. 89-8218.
 United States Court of Appeals,
Eleventh Circuit.
 March 1, 1990.
 
 Michael A. Dailey, Phears & Dailey, Norcross, Ga., for defendant-counter claimant-appellant.
 Ben Kingree, III, Carter & Ansley, Atlanta, Ga., for plaintiff-counter defendant-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before VANCE* and KRAVITCH, Circuit Judges, and LYNNE**, Senior District Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 United of Omaha Life Insurance Company ("United") brought an action against Sun Life Insurance Company ("Sun Life") to recover certain insurance benefits paid to a Sun Life employee under a group insurance policy issued by United to Sun Life and its employees. In a counterclaim, Sun Life sued to recover benefits that United denied to a different employee. Both parties moved for summary judgment on both claims. Sun Life appeals from the grant of summary judgment to United and from the denial of its motion for summary judgment. Because we find that United's claim for reimbursement presents genuine issues of material fact, we reverse the grant of summary judgment on that claim. We also reverse the district court's grant of summary judgment in favor of United on Sun Life's counterclaim and direct the court to enter summary judgment in favor of Sun Life on that claim.
 
 I. BACKGROUND
 
 2
 Until January of 1986, Sun Life had maintained a group life insurance policy with Life Insurance Company of Georgia ("Life of Georgia") covering its employees. For two years prior to January 1986, negotiations were conducted between Sun Life and United's Sales Manager, Donald Nelson, regarding the possibility of United replacing Life of Georgia as the provider of Sun Life's group policy. After Sun Life refused United's 1984 proposal, United submitted another proposal in August 1985 in an attempt to duplicate as closely as possible the benefits that were provided by Life of Georgia.
 
 
 3
 Under the proposal, premiums for basic life insurance coverage for all employees were to be paid for entirely by Sun Life, and the benefits were to be based upon an employee's salary. Supplemental coverage could be purchased separately with premiums to be paid by individual employees electing this option.
 
 
 4
 When the policy went into effect on January 1, 1986, Sun Life had only the 1985 proposal before it. It did not receive United's Master Policy and accompanying Certificate-Booklets spelling out the terms of the policy until several months later.
 
 II. DISCUSSION
 
 5
 The instant case involves a dispute over the claims of two employees, Frank Wells and James Del Guidice. The district court found that there were no material facts in dispute regarding either claim and that United was entitled to summary judgment in its favor on both. We find that the district court erred in both cases and review each in turn.
 
 A. The Wells Claim
 1. Background
 
 6
 Frank Wells, an employee in Sun Life's Home Office Division, enrolled for supplemental insurance on January 4, 1986. Premiums for supplemental coverage were deducted from his paycheck by Sun Life and remitted to United. At the time he enrolled, Wells was on short-term disability leave, which had begun on November 22, 1985 and continued until his death on February 27, 1986. After Wells' death, his widow submitted a claim to United which United honored by paying the basic benefits in the amount of $36,300 plus $53,306.47 for supplemental death benefits plus interest.[1] After payment, United filed this action alleging that Sun Life, acting as its agent, knowingly or negligently enrolled an ineligible employee for supplemental benefits. United claims indemnification from Sun Life for the violation of the latter's duty to enroll only eligible employees for coverage.
 
 2. Standards for Summary Judgment
 
 7
 Under Fed.R.Civ.P. 56(c), summary judgment is proper when the court determines, on the basis of materials submitted by both parties, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden of establishing the absence of a genuine issue of material fact is on the party seeking summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).
 
 
 8
 Once the moving party has come forward with materials in support of its motion, the party opposing the motion must demonstrate the existence of evidence that would support a verdict in its favor. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. The court must view all evidence in the light most favorable to the non-movant and must resolve all reasonable doubts about the facts in favor of the non-movant. Warrior Tombigbee Transportation Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). In addition, the Eleventh Circuit held in Washington v. Dugger that "if reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment." 860 F.2d 1018, 1020 (11th Cir.1988) (quoting Mercantile Bank & Trust Co. v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985)). If a review of the evidence presented reveals that the non-movant has failed to produce evidence sufficient to support a jury verdict in his favor, then summary judgment should be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). We review the trial court's summary judgment decision de novo. See Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1513 (11th Cir.1989); Clemons v. Dougherty, 684 F.2d 1365, 1368 (11th Cir.1982).
 
 
 9
 With these standards in mind, we turn to the issues surrounding Wells' claim for supplemental benefits.
 
 3. Agency
 
 10
 United contends that Sun Life's negligence in enrolling Wells for supplemental coverage for which he allegedly was ineligible is the basis of United's liability to the beneficiary. United can prevail on its claim for indemnification from Sun Life for the payment of supplemental benefits only if it can show that Sun Life was acting as its agent at the time that it enrolled Wells for this coverage.
 
 
 11
 The district court found that the question of agency was "easily answered" in the affirmative by the Georgia Supreme Court's decision in Dawes Mining Company, Inc. v. Callahan, 246 Ga. 531, 272 S.E.2d 267 (1980). In Dawes, the court had to decide whether an employer acts as the agent of the employee or of the insurance company when changing a group policy. The court noted that the agency relationship may change depending on the circumstances:
 
 
 12
 Once the group policy has been issued, the employer is the agent of the insurer in determining which persons are its employees and are thereby eligible to participate as a member of the group, Equitable Life v. Florence [47 Ga.App. 711, 171 S.E. 317 (1933) ], supra, in determining which of its employees are regularly performing their duties and are thereby eligible to receive certificates of increased insurance, Cason v. Aetna Life [91 Ga.App. 323, 85 S.E.2d 568 (1954) ], supra, and in determining which of its employees are employed full time, Pilot Life v. McCrary [103 Ga.App. 549, 120 S.E.2d 134 (1961) ], supra. These cases are governed by the rule that the employer who obtains a group insurance policy covering its employees is the agent of the insurance company for every purpose necessary to make effective the group policy, and thus the insurance company has imputed knowledge of facts which the employer knows. Cason v. Aetna Life, supra; Piedmont Southern Life v. Gunter [108 Ga.App. 236, 132 S.E.2d 527 (1963) ], supra.
 
 
 13
 However, in selecting a group insurer, in selecting a policy, in selecting coverages to be afforded by the insurer, the employer is negotiating with the prospective insurer; there is no contract in force; and the employer cannot be the agent of the insurer. It has been said that " 'When procuring the policy [and] obtaining applications of employees ... employers act not as agents of the insurer but for their employees or for themselves.' " Thigpen v. Metropolitan Life [57 Ga.App. 405, 195 S.E. 591 (1938) ], supra; Blaylock v. Prudential [84 Ga.App. 641, 67 S.E.2d 173 (1951) ], supra.
 
 
 14
 Hence, we find that the relationship which is decisive in this case is that in procuring the group policy and obtaining employee applications, the employer acts as an agent of the employees where the employees will be contributing toward payment of the premium.
 
 
 15
 Id. at 533-34, 272 S.E.2d 267.
 
 
 16
 We agree with the district court that Dawes is controlling. At the time it enrolled Frank Wells for supplemental coverage, Sun Life was no longer in the process of selecting a group insurer or negotiating over types of coverage; it was clear that United would be its insurer as of January 1, 1986. Instead, when enrolling Wells for one of the types of coverage offered by United, it was implicitly determining that Wells was eligible for that insurance.
 
 
 17
 In support of its contention that it was acting as Wells' agent and not the insurers', Sun Life points to the language in Dawes stating that when "obtaining applications of employees" an employer acts as an agent of the employees. We agree with United that the process of obtaining applications is distinct from the process of enrolling employees for supplemental coverage. Because Wells was automatically covered by the basic insurance of the group policy, no application was necessary. Consequently, this language in Dawes is inapposite.
 
 
 18
 Sun Life also points to the fact that it sent the memorandum sheet on which the employee was to indicate his desire for supplemental coverage in December, before coverage began. This, we find, is irrelevant. At the time the memorandum was sent, it was already clear that United would be providing coverage as of January 1, 1986. In fact, the memorandum refers to "The new Supplemental Life Rates to be effective January 1, 1986." Thus, it is clear that United was not engaged in the process of negotiating the contract, but was rather involved in carrying it out.
 
 
 19
 For the foregoing reasons, we find that the district court was correct in determining that under Dawes, as a matter of law, Sun Life was acting as United's agent when it enrolled Wells for supplemental coverage.
 
 4. Negligence of Sun Life
 
 20
 Although we find that Sun Life was acting as United's agent, United can only prevail on its motion for summary judgment if it shows that there are no material facts in dispute as to whether Sun Life was negligent in enrolling Frank Wells for supplemental coverage and that it is entitled to judgment as a matter of law. We do not find that United has made such a showing.
 
 
 21
 United's policy went into effect on January 1, 1986. It is undisputed that when Wells enrolled on January 4, Sun Life had United's 1985 proposal in its possession. It is also undisputed that United's Master Policy as well as the Certificate-Booklets that set forth the terms and conditions of the actual agreement were not delivered to Sun Life until some time after Wells' death.[2]
 
 
 22
 Under the subject heading "General Information," the 1985 proposal contained the following language:
 
 
 23
 All persons actively working a minimum of 30 hours a week on a full-time basis who have completed the prescribed qualifying period will be eligible for insurance.
 
 
 24
 The proposal did not contain a definition of the term "actively working" as used to determine eligibility. In contrast, the Certificate-Booklets, that arrived some months later, make clear that an "active employee" is a person who is working at his regular job at his place of employment. Furthermore, and central to this case, the booklets specify that only "eligible employees," that is, employees actively at work, may be enrolled for supplemental coverage. They contain the following language:
 
 Eligible Employees
 
 25
 You are eligible on January 1, 1986, if you were hired on or before January 1, 1986. If you are hired after January 1, 1986, you are eligible on the day you begin active employment with the Policyholder.
 
 You are eligible as long as:
 
 26
 (a) you are a permanent full-time employee of the Policyholder; and
 
 
 27
 (b) you are and continue to be actively employed.Active employment and actively employed means working 32 hours a week at your:
 
 
 28
 (a) regular job; and
 
 
 29
 (b) customary place of employment.
 
 
 30
 When Your Insurance Begins (Supplemental Life Insurance)
 
 
 31
 If you make a written request before, on or within 90 days from the day you become eligible, you will become insured on the later of:
 
 
 32
 (a) the day you become eligible; or
 
 
 33
 (b) the day we receive your request, provided you are actively at work on that day. If you are not actively at work, your insurance will begin on the day you return to active work.
 
 
 34
 The language of the policy is clear, and had the booklet with this language been available to Sun Life at the time it enrolled Wells for supplemental coverage we would have no difficulty in concluding that Sun Life was negligent in enrolling Wells for supplemental coverage. See Smith v. Founders Life Assurance Company of Florida, 175 Ga.App. 262, 333 S.E.2d 5, 6 (1985). The crux of this dispute is what the parties should have understood the term "active employment" to mean between the time the policy took effect and the time that the booklets defining that language were received by Sun Life.[3]
 
 
 35
 The district court found that the non-delivery of the booklets was irrelevant. It stated that Sun Life should have known, based on the language in the 1985 proposal, that an employee must be actually at work in order to be eligible for supplemental coverage. It stated that " '[a]ctively working' means what it says. Someone on disability leave is not actively working thirty hours a week. Whether Sun Life considered Mr. Wells to be an active employee and continued to pay him full salary is irrelevant." United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America, No. 1:87-CV-1272-JTC, slip op. at 6 (N.D.Ga.1989).
 
 
 36
 We find, however, that Sun Life has presented evidence from which a jury could find that at the time Wells enrolled, Sun Life could reasonably have been confused as to the eligibility of its employees for supplemental coverage. During negotiations preceding January of 1986, the parties had an understanding that the United policy would replicate Sun Life's current policy with Life of Georgia as closely as possible. The Life of Georgia policy defined an "employee" as follows:
 
 
 37
 "Employee" means
 
 
 38
 (a) a person working for the Employer on a regular full-time permanent basis for thirty (30) hours or more per week and who is compensated by the Employer for such work
 
 
 39
 . . . . .
 
 
 40
 (c) a person who is an Employee as defined in (a) except for being temporarily unable to work 30 hours per week because of Injury or Illness. This [exception] applies only if the Employer continues such person as a full-time employee in Your payroll records.
 
 
 41
 Life of Georgia's summary plan description states that:
 
 
 42
 [i]f your employer grants you a temporary leave of absence, insurance may be continued for a maximum of three months, if premiums are paid and the group policy remains in force. Insurance may be continued beyond three months in the case of illness or injury. If the sick leave plan established by your employer exceeds three months [sic].
 
 
 43
 Karen Supthin, Sun Life's Personnel Manager, testified that sick leave or "short term disability" could extend up to six months without jeopardizing an employee's "active status." She stated that Sun Life employees on short-term disability are treated "as an active employee in that they remain on our payroll, and their benefits remain the same." Only after six months is the employee converted from short-term to long-term disability status. At this point, the employee is no longer considered active and his eligibility for the group plan changes.
 
 
 44
 Gloria Van Dyke Lee, former Personnel Director at Sun Life, stated that it was her understanding that under the Life of Georgia policy, an employee with basic insurance could apply for supplemental benefits even after he became disabled or was on sick leave "because they were continued as an active employee. Everything continued whether it was employee paid or company paid."
 
 
 45
 According to Sun Life, its understanding of the requirements for supplemental coverage was based on representations made by Donald Nelson, the Sales Manager negotiating the contract for United. Deposition testimony from Nelson provides evidence from which a jury could conclude that Sun Life's construction of the term "actively working" was justified by Nelson's representations. For instance, Nelson testified that United's practice is to ask what the prospective insured's employment policies are with regard to active and inactive employees. He also stated that United would accept Sun Life's test for determining when an active employee's sick leave had extended so long that he or she was no longer regarded as active.
 
 
 46
 United argues that Sun Life confuses the right of employees such as Wells, who were on short-term disability, to be enrolled under United's policy for a continuation of their Life of Georgia basic coverage and the right of such employees to enroll for supplemental benefits which were not offered by Life of Georgia. United states that the only reason Wells, though not at work, was eligible for basic coverage was because United was required by Georgia Insurance Department Regulation Section 120-2-10.10[4] to provide Wells with the same coverage that he received under Sun Life's prior group plan with Life of Georgia. It contends that at no time did it waive the requirement that an employee be "actively working" to be eligible for coverage.
 
 
 47
 Although United may have had no intention of offering supplemental coverage to employees in Wells' position, we note that no distinction was made in the 1985 proposal between basic and supplemental insurance and that testimony from Sun Life personnel officers concerning the availability of supplemental coverage under the Life of Georgia plan demonstrated confusion as to what their employees' coverage had been under that plan.[5]
 
 
 48
 The parties dispute at length the meaning of Nelson's statement in his deposition that "all active full-time employees would be given an opportunity to enroll for their basic amount of life insurance and a supplemental amount of insurance." Sun Life contends that this statement leaves the distinct impression that Wells was eligible for supplemental insurance, as he was still considered "active" in their books. The district court agreed with United, however, that the statement supports United's position. It found that Nelson was implying that active employees would be able to enroll for supplemental coverage in the future, after they met the eligibility requirements set out in the policy. It further stated that the word "active" in Nelson's mind "may connote an employee who is actually working full time." United of Omaha, slip op. at 8 (emphasis added). While we do not pass judgment on the import of Nelson's statement, we are convinced that it is ambiguous and points to the confusion surrounding the parties' understanding of employee eligibility for supplemental coverage.
 
 
 49
 In granting summary judgment in United's favor, the district court found that the language setting forth eligibility requirements in the 1985 proposal was unambiguous and that Nelson had never suggested that a disabled non-working employee could enroll for supplemental coverage. We find that in so concluding, the court was forced to rely heavily on its own interpretation of what the parties must have agreed to. Our own review of the evidence convinces us that genuine issues of fact remain as to whether Sun Life's belief in Wells' eligibility for supplemental coverage was a reasonable one given the nature of the negotiations between the parties and the absence of a written policy. This determination, requiring the weighing of evidence and decisions regarding credibility, is one that should be left to a jury. Accordingly, we reverse the grant of summary judgment in favor of United on the question of Sun Life's negligence in enrolling Wells for coverage and remand for further proceedings consistent with this opinion.
 
 B. The Del Guidice Claim
 
 50
 The Del Guidice claim does not concern the difference between the parties' understanding of the policy provisions before the booklets arrived, but rather points up a distressing lack of clarity in the policy as printed.
 
 
 51
 Del Guidice was an employee in Sun Life's Career Division. Although he was covered by the same Master Policy as Wells, the terms of that policy, as it applied to him, were set out in the Certificate-Booklet covering employees in the Career Division. There is no dispute that Del Guidice was an active Sun Life employee at the time that United's policy went into effect on January 1, 1986, and that he was covered by the basic life insurance plan. Del Guidice went on short-term disability leave in February 1986. He turned 60 in March 1986. Del Guidice returned to work in August and again went on disability in September 1986. He died in January 1987, less than six months after commencing his September leave.
 
 
 52
 United refused to honor Del Guidice's widow's claim for benefits. In a letter to Mrs. Del Guidice, it explained its reasons as follows:
 
 
 53
 Information in file shows your husband last worked on 9-26-86 due to disability.
 
 
 54
 Under the group policy it states in part under the When Your Insurance Ends Provision of the policy, "coverage would end at midnight on the earliest of the day in which you are no longer eligible under the policy. You are no longer eligible when you are disabled."
 
 
 55
 Your husband's coverage terminated on September 30, 1986. Since he was over age 60 at the time he became disabled he would not be eligible under the continuance of life insurance if you become totally disabled provision of the policy. Since he was no longer eligible under the policy when he died, we are unable to provide the life benefits.
 
 
 56
 When United refused to pay the claim of $35,254.15 following Del Guidice's death, Sun Life paid it in accordance with its obligation under a union collective bargaining agreement. Sun Life then filed a counterclaim against United to recover the money.
 
 1. Policy Provisions
 
 57
 The policy provisions in the Career Employees booklet referred to in United's letter refusing the Del Guidice claim are as follows:
 
 When Your Insurance Ends
 
 58
 Your insurance will end at midnight on the earliest of:
 
 
 59
 (a) the day the policy ends;
 
 
 60
 (b) the day any premium for your insurance is due and unpaid;
 
 
 61
 . . . . .
 
 
 62
 (d) the day in which you are no longer eligible under the policy.
 
 
 63
 If you are eligible because of your employment, you will no longer be eligible when:
 
 
 64
 (a) you resign or retire;
 
 
 65
 (b) you go on leave of absence or strike;
 
 
 66
 (c) you are dismissed, disabled, suspended, laid off, locked out or are not working due to work stoppage;(d) you are no longer in an eligible class; or
 
 
 67
 (e) you do not satisfy:
 
 
 68
 (1) the requirement for hours worked; or
 
 
 69
 (2) any other eligibility conditions in the policy.
 
 
 70
 The booklet's definition of "eligibility" was identical to the definition in the Home Office employee's booklet and is set out above in our discussion of the Wells claim.
 
 
 71
 The booklet covering Del Guidice also contained the following language:
 
 
 72
 Continuance of Life Insurance If You Become Totally Disabled
 
 
 73
 If you become totally disabled, your life insurance will not end in accord with the When Your Insurance Ends provision, but will be continued without payment of premium provided:
 
 
 74
 (a) the disability began while you were insured under this provision;
 
 
 75
 (b) the disability began before you reach [sic] age 60; and
 
 
 76
 (c) proof of the disability is given to us as described in the following paragraph.
 
 
 77
 The meaning of the letter sent to Mrs. Del Guidice and the policy provisions it refers to are the subject of this dispute. Specifically, the parties disagree on the reason for United's refusal of benefits. Discerning that reason proves to be no easy task.
 
 
 78
 The district court stated that "Del Guidice's coverage ended when he failed to be 'actively employed ' as that term was defined in the Policy." United of Omaha, slip op. at 14 (emphasis added). However, it also stated that "United refused payment on the grounds that Mr. Del Guidice had become totally disabled on the date his leave began and that he was then over the age of 60." Id. at 13 (emphasis added). Elsewhere, the court states that when he "became disabled in September of 1986, [his] coverage ended and he was ineligible for continuation of coverage." Id. at 15 (emphasis added).
 
 
 79
 Confusion over the exact grounds for termination of coverage is also evident in United's brief before this court, where United offers a variety of reasons for its denial of coverage. Contrary to its letter to Mrs. Del Guidice, in which it indicates that her husband's coverage was stopped because he was disabled, United states in its brief that Del Guidice's coverage was terminated when he "failed to meet the active work requirement." It thus suggests that there is no distinction between "disability" and "failure to meet the active work requirement." It then suggests that there is no distinction between "disabled" and "totally disabled" when it states that Del Guidice was not covered under the continuation of coverage provision because "the policy provided for a continuation of coverage in the event the employee became disabled provided the disability began before the employee reached age 60." Finally, it states that the only exception to the termination of insurance for an employee "is when the employee is totally disabled." This conflation of the terms "disabled" and "totally disabled" is particularly troubling given that "totally disabled" is a term of art, defined in the policy to mean "a disability which completely and continuously keeps you from performing any work or engaging in any occupation." The term "disability" is not defined.
 
 
 80
 Sun Life claims that United refused to pay Del Guidice's claim on the grounds that he had become totally disabled on September 29, 1986 and was at that time over the age of 60. It then argues that United did not demonstrate that Del Guidice was totally disabled within the meaning of the policy. Under the policy, proof of total disability is required in the form of initial notice of total disability by the insured within twelve months followed by physician certification.
 
 2. Interpreting the Policy Provisions
 
 81
 Because this case is a diversity action governed by Georgia law, we apply principles of that state's law to interpret the provisions of the insurance contract covering Del Guidice. See Georgia R.R. Bank & Trust Co. v. Fed. Deposit. Ins. Corp., 758 F.2d 1548, 1551 (11th Cir.1985). Under Georgia law, construction of an insurance contract is a question of law for the court. Giles v. National Union Fire Ins. Co. of Pittsburgh, Pa., 578 F.Supp. 376, 378 (D.C.Ga.1984); O.C.G.A. 13-2-1 (1982). Georgia law also makes clear that "the process of contract construction ... is composed of three steps." Travelers Ins. Co. v. Blakey, 255 Ga. 699, 342 S.E.2d 308, 309, on remand, 180 Ga.App. 520, 349 S.E.2d 474 (1986). First, the court must decide whether the contract is ambiguous. Then, where ambiguity exists, the court must apply the rules of construction governing interpretation of insurance contracts. Finally, if ambiguity still remains, the court must submit the issue to the jury. United States Fire Ins. Co. v. Cowley & Associates, 183 Ga.App. 478, 359 S.E.2d 160, 162 (Ga.App.1987); Travelers, 349 S.E.2d at 476.
 
 
 82
 On close examination, we find that the provisions of the contract that United relies on to deny coverage to Del Guidice are ambiguous. Our construction of the contract resolves the ambiguity, however, and leaves no question requiring submission to a jury.
 
 
 83
 a. Disability
 
 
 84
 The principal reason given by United for terminating Del Guidice's coverage is that he was disabled. The meaning of the word "disability" as it is used in the provision for "When Your Insurance Ends" is not defined in the policy. United appears to equate disability with failure to meet the "actively at work" requirement. Under this reading of the term, the first day an employee stays home from work because of sickness, United would consider him "disabled" within the meaning of the policy, and accordingly, coverage would end. That is, there is no coverage for any employee who does not die at work or before missing any days of work. At oral argument, United was unable to explain any way in which its policy differentiates between sick leave and disability.
 
 
 85
 Sun Life contends that under United's policy, "disability" is not equivalent to sick leave, but means "total disability," a condition in which an individual is unable to perform any work or engage in any occupation. Sun Life equates total disability with long-term disability and argues that because Del Guidice was ill for less than six months, he was, by definition, not totally disabled.
 
 
 86
 In deciding which party's interpretation is correct, we are guided by principles of construction that Georgia applies to insurance contracts. This court has held that in Georgia, "construction of insurance contracts begins with the premise that the policy must 'be construed so as to give effect to the intentions of the parties. All other rules of contract interpretation and construction are subservient to that principle....' " National Hills Shopping Ctr., Inc. v. Liberty Mut. Ins. Co., 551 F.2d 655, 657 (5th Cir.1977) (quoting Tennessee Corp. v. Hartford Accident and Indemnity Co., 463 F.2d 548, 551 (5th Cir.1972)).[6] In addition, it is an established rule of Georgia law that, with respect to insurance contracts, "ambiguities ... must be construed strongly against the carrier, and an insurance policy must be construed to provide coverage unless the contrary clearly appears." Garmany v. Mission Ins. Co., 785 F.2d 941, 945 (11th Cir.1986) (summarizing Georgia cases so holding). In particular, exclusions from coverage sought to be invoked by the insurer are to be strictly construed against the insurer unless they are clear and unequivocal. First Georgia Ins. Co. v. Goodrum, 187 Ga.App. 314, 370 S.E.2d 162, 163 (1988).
 
 
 87
 We find it inconceivable that Sun Life would have agreed to a policy whereby an individual, who remains an employee of the company, loses coverage as soon as he is not at his place of employment.[7] We agree with Sun Life that "disabled" must be read to mean "totally disabled," that is, a disability which completely and continuously prevents the employee from engaging in any occupation. We find that it is reasonable to construe the contract such that an employee's coverage ceases when he is no longer physically able to engage in his occupation. It is not unusual for group policies to link extension of coverage to the insured's continued employment with the employer offering the policy. Indeed, "[n]early all group insurance contracts provide either that at the termination of the employment or at a certain fixed period of time thereafter the insurance will automatically cease to be effective." 1 J. Appleman, Insurance Law and Practice Sec. 121 at 375 (1981); see also Shands v. Nationwide Life Insurance Co., 250 F.Supp. 627, 629 (N.D.Ga.1965), aff'd, 355 F.2d 103 (5th Cir.1966) (referring to general rule that coverage under group policy terminates automatically with the termination of employment).
 
 
 88
 b. The "actively at work" requirement
 
 
 89
 The eligibility requirements for Career Division employees state that to be eligible for insurance, an employee must be working 32 hours a week at his regular job and customary place of employment. According to United, coverage for Del Guidice terminated when he was no longer "actively employed." We find that the requirement of "active employment" as used for purposes of termination of coverage is ambiguous. It does not distinguish between those parties who fail to meet the "active work" requirement because they are on vacation and those parties who fail to meet the requirement because they are working only part-time or have permanently left work. As with disability, United appears to argue that the "active work" requirement disqualifies an employee as soon as he does not show up at his place of business. Sun Life argues, on the other hand, that the "active employment" requirement is superseded when an employee is on short-term disability, and that this is defined by Sun Life to begin five days after an employee is out sick and to extend for six months. It is undisputed that Sun Life has an internal policy of continuing existing coverage for employees who are on short-term disability.
 
 
 90
 As noted above, where provisions of an insurance contract are ambiguous or subject to doubt, the interpretation most favorable to coverage of the insured will prevail. We agree with Sun Life that the "active work" requirement cannot be construed to terminate coverage for employees who are out on short-term sick leave. As the court stated in Morris v. Mutual Benefit Life Insurance Company, 258 F.Supp. 186, 190 (N.D.Ga.1966), "it would be unreasonable to assume that the parties intended a contract whereby any regular employee would be excluded during any week in which he did not work 30 hours because of illness, vacation, etc."
 
 
 91
 Having held that the contract covering Del Guidice allows for termination of coverage due to disability only in the event that the disability is total, we must now decide whether this case should go to trial on the question of whether Del Guidice was totally disabled when he ceased work in September of 1986.
 
 
 92
 We decline to remand the case for trial because we find that United has not put the extent of Del Guidice's disability at issue as a disputed question of fact. Sun Life has offered evidence to show that at the time Del Guidice died, he had been out of work for less than six months and was thus on short-term disability leave. He had not been terminated from employment, but remained listed as an active employee of Sun Life, was on its payroll, and received his paycheck. Not only has United offered no evidence to show that Del Guidice was totally disabled when he went on sick-leave in September of 1986, but United has made it clear that under its interpretation of the contract, the extent of Del Guidice's disability is irrelevant.
 
 
 93
 United had an opportunity to offer proof on the issue of Del Guidice's disability in response to Sun Life's motion for summary judgment and it declined to do so. Because United has come forth with no proof of Del Guidice's total disability, we reverse the grant of summary judgment in favor of United on the Del Guidice claim and direct the district court to enter summary judgment in favor of Sun Life in the amount of $35,254.15.
 
 
 94
 REVERSED and REMANDED.
 
 
 
 *
 Judge Robert S. Vance was a member of the panel which heard oral argument but due to his death on December 16, 1989 did not participate in this decision. This case is decided by a quorum. See 28 U.S.C. Sec. 46(d)
 
 
 **
 Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 United initially refused to pay Wells' claim for supplemental benefits, but later reconsidered its position
 
 
 [2]
 The parties dispute the exact date of arrival. United contends that the booklets were distributed in the Spring of 1986. Sun Life contends that they received the booklets in September of 1986
 
 
 [3]
 Despite United's contention that the proposal was a "sample booklet containing the material terms and conditions of the policy," it is clear that the proposal differed from the booklets. For instance, the number of hours that constituted full-time employment was changed from 30 in the proposal to 32 in the booklets
 
 
 [4]
 Regulation Sec. 120-2-10.10 entitled "Group Coverage Discontinuation and Replacement" mandates that every employee validly covered under a prior plan on the date of discontinuance be covered by the succeeding carrier. These regulations also spell out the method for determining the scope of the prior carrier's benefits
 
 
 [5]
 For instance, Gloria Van Dyke Lee testified that the employees under the Life of Georgia plan "always had the option of purchasing the supplemental coverage" though she could not point out any provision in the Life of Georgia plan for supplemental benefits
 
 
 [6]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [7]
 Under United's reading of "disabled," an employee who works from 9 a.m. to 5 p.m. and has a heart attack after work at 8 p.m. is covered if he dies at 8:45 a.m. the next morning (before he is due at work), but loses coverage if he dies at 9:15 a.m