FARMERS INSURANCE EXCHANGE, Plaintiff/Counter–Defendant/Appellee,

v.

Phyllis SMITH, Tammy and Stacy Wilson, Sr., Individually and as Parents and Natural Guardians of Stacy Wilson, Jr., Defendants/Counter–Claimants/Appellants.

Phyllis Smith; Tammy and Stacy Wilson, Sr., Individually and as Parents and Natural Guardians of Stacy Wilson, Jr., Counter–Claimants/Appellants,

v.

Farmers Insurance Exchange, Counter–Defendant/Appellee.

No. 20A03–0011–CV–412.

Court of Appeals of Indiana.

Oct. 10, 2001.

146

Edmond W. Foley, Foley & Small, South Bend, IN, Attorney for Appellant.

Martin J. Gardner, Huelat & Gardner, South Bend, IN, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellants-defendants Phyllis Smith and Tammy and Stacy Wilson, Sr., (collectively, the Wilsons) individually and as the parents and natural guardians of Stacy Wilson, Jr., (Stacy) appeal the declaratory judgment entered in favor of appellee-plaintiff Farmers Insurance Exchange [1] (Farmers Insurance). Specifically, they claim that the trial court erred in determining that the insurance policy's "business pursuits" and "home care services" exclusions denied coverage of Stacy Wilson, Jr.'s injuries.

---

1. Although the caption and pleadings refer to the insurance company as Farmers Insurance Exchange, on appeal the appellee refers to itself as Farmers Insurance Group.

## FACTS

Smith retired from full-time employment sometime around 1993. After retiring, she began providing childcare in her home. Her name has been on a list of babysitters at Woodland School District for approximately fifteen years. In 1995 the Wilsons registered their son Stacy for school. The school secretary gave the Wilsons a list of prospective childcare providers that included Smith. Tammy telephoned Smith, met with her, and then arranged for Smith to watch Stacy and his younger sister Sosha. That year Stacy attended half-day kindergarten, so he required only half-day childcare. Because Sosha was not yet attending kindergarten, she required full-day childcare.

The following school year, 1996–97, Smith continued to watch the Wilson children. During that school year Sosha was in half-day kindergarten, so Smith provided childcare for her approximately 30 hours per week. R. at 427. Smith also provided before- and after-school childcare for five other children: John and Jessica Roy, Mike and Travis Nolan, and Starla Roberts. These children were at Smith's an hour or so before the bus arrived in the morning and an hour or so after the bus dropped them off at Smith's. In general, Smith received payment for her childcare services in the amount of $55 per week for the Wilson children, $25 per week for Mike and Travis Nolan, and $15 per week for John and Jessica Roy. She did not receive payment for watching Starla.

On the morning of May 6, 1997, Smith was providing childcare services for the Wilson children and other children, including John Roy. That same morning John Roy threw a lawn dart which struck Stacy in the head. At the time of Stacy's injury, Smith was insured under a homeowners policy with Farmers Insurance. When the Wilsons filed suit against Smith, Farmers Insurance denied coverage of Stacy's injuries under the policy's "home care services" exclusion.

The "home care services" exclusion reads as follows:

> We do not cover **bodily injury** or **property damage** which:
>
> . . . .
>
> 4. results from the legal liability of any **insured** because of home care services provided to any **person** on a regular basis by or at the direction of:
>
> a. any **insured**;
>
> b. any employee of **insured**;
>
> c. any other person actually or apparently acting on behalf of any **insured.**
>
> Regular basis means more than 20 hours per week.

Record at 37–38 (emphasis in original). The term "person" is defined on page one of the policy to include the insured "*and any other individual, group,* corporation, company, firm, association," etc. R. at 34 (emphasis supplied). The insured is defined in the policy as including Smith.

Farmers Insurance filed a claim for declaratory judgment, claiming that Smith's policy excluded coverage of Stacy's injuries. The Wilsons counterclaimed for declaratory judgment, asserting that the policy did not exclude coverage. The parties subsequently agreed to a number of important stipulations. First, the Wilsons dismissed their suit against Smith with the understanding that Farmers Insurance would make payment to them if the trial court found that coverage existed. Second, coverage for Stacy's injuries would exist, unless the "home care services" exclusion applied. Third, the parties admitted all depositions, records, and affidavits into evidence without objection. Thus, the case was presented to the trial court by

means of evidentiary submission with no live testimony.

The trial court entered a declaratory judgment in favor of Farmers Insurance. In so doing, the trial court issued findings of fact and conclusions of law. The trial court found that there was no coverage under the policy because of the "business pursuits"[2] and "home care services" exclusions. The Wilsons now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Where a trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind.2000). However, where the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded the trial court's factual findings or judgment because under those circumstances a court of review is in as good a position as the trial court to determine the force and effect of evidence. *See GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind.2001) (citing with approval the proposition that "where a case is tried wholly upon documents or stipulations, the appellate tribunal is in as good a position as the trial court to determine the force and effect of evidence"); 3 William F. Harvey, *Indiana Practice: Rules of Procedure Annotated* § 52.9, at 404–05 (2d ed. 1988) ("In a 'documents case,' there are no 'live witnesses,' whose demeanor might be correctly judged and added to the trial court's finding of fact. There is no scene to view, there is no witness to observe it, no demeanor to measure, no solid 'guthunch' about veracity or truth."). Thus,

based as they were on a paper record, we will review de novo the trial court's findings and rulings in favor of Farmer's Insurance. *See id.; Degussa Corp. v. Mullens*, 744 N.E.2d 407, 412, 415 (Ind.2001) ("Where facts are in dispute but the trial court rules on a paper record without an evidentiary hearing, we review the trial court's ruling de novo."); *cf. Houser v. State*, 678 N.E.2d 95, 98 (Ind.1997) ("Because both the appellate and trial courts are reviewing the paper record submitted to the magistrate, there is no reason for appellate courts to defer to the trial court's finding that a substantial basis existed for issuing the warrant.").

However, even though our supreme court styled this review "de novo," it established a presumption in favor of the trial court's findings and judgment. As our supreme court explained:

In so doing, we will affirm the judgment of the trial court on any legal theory the evidence of record supports. However, the ruling of the trial court is presumptively correct, and we will reverse on the basis of an incorrect factual finding only if the appellant persuades us that the balance of evidence is tipped against the trial court's findings.

*GKN Co.*, 744 N.E.2d at 401; *accord Degussa*, 744 N.E.2d at 412, 415.

### II. The Wilsons' Claims

■ The Wilsons claim that the "home care services" exclusion in Smith's insurance policy is ambiguous, thus entitling them to coverage for Stacy's injuries. As they correctly observe, courts construe ambiguous terms in an insurance policy in favor of the insured, especially where

---

**2.** Both parties stipulated that coverage would exist if the "home care services" exclusion did not apply to the case. R. at 54–55. Farmers Insurance concedes on appeal that the trial court committed error to the extent that it

relied on the "business pursuits" exclusion to deny coverage. Appellee's brief at 5. Thus, we will address only whether the trial court erred in denying coverage based on the "home care services" exclusion.

those terms limit or exclude coverage. *Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind.1998). Construing ambiguous terms in favor of the insured promotes the policy's basic purpose of indemnity. *Id.* "Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language." *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). Reasonable persons might differ if the term is susceptible to more than one interpretation. *Meridian Mut.*, 698 N.E.2d at 773.

■ Where terms are unambiguous, however, they should be given their plain and ordinary meaning. *Id.* Failure to define a term in an insurance policy does not necessarily make it ambiguous. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). Furthermore, courts will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Am. Family Life Assurance Co. v. Russell,* 700 N.E.2d 1174, 1177 (Ind. Ct.App.1998), *trans. denied.* The meaning of a contract can only be gleaned from a consideration of all its provisions, not from an analysis of individual words or phrases read alone. *Evansville–Vanderburgh Sch. Corp. v. Moll,* 264 Ind. 356, 363, 344 N.E.2d 831, 837 (1976); *Mich. Mut. Ins. Co. v. Combs,* 446 N.E.2d 1001, 1004 (Ind. Ct.App.1983).

### A. "Regular Basis" and "20 Hours Per Week"

■ The Wilsons first argue that the "home care services" exclusion is ambiguous because of the terms "regular basis" and "20 hours per week." The policy excludes coverage if legal liability results from Smith providing coverage to any person on a "regular basis." R. at 37. Immediately beneath the exclusion, "regular ba-

sis" is defined as "more than 20 hours per week." R. at 38. The Wilsons claim that "per" means "each and every." Appellants' brief at 18. Therefore, they conclude, coverage would be excluded only if Smith provided childcare for more than 20 hours *each and every* week.

In *Morris v. Mut. Benefit Life Ins. Co.,* a federal district court addressed a similar phrase: "30 hours per week." 258 F.Supp. 186, 187 (N.D.Ga.1966). The insurance contract in *Morris* provided group life insurance for "full-time" employees. *Id.* The insurance contract stated that any employee who "works less than 30 hours per week shall not be considered a full-time employee." *Id.* The court explained: "[I]t would be unreasonable to assume that the parties intended a contract whereby any regular employee would be excluded during any week in which he did not work 30 hours because of illness, vacation, etc." *Id.* at 190. The *Morris* court concluded that the 30 hour per week provision should be applied not on a week-by-week basis, but on an average basis to determine whether the employee is full time or temporary. *Id.* at 189–90.

Likewise, it would be unreasonable to assume that Smith and Farmers Insurance intended to form a contract whereby coverage would be excluded only if Smith provided childcare for more than 20 hours each and every week. Otherwise, under the same reasoning, if during one week Smith provided care for less than 20 hours because of illness or vacation, then coverage would never be excluded. Such an interpretation of "per" renders the exclusion meaningless. *See Russell,* 700 N.E.2d at 1177.

Moreover, we must glean the meaning of the exclusion not just from the isolated phrase "20 hours per week" but from the entire contract. *See Combs,* 446 N.E.2d at 1004. As such, the phrase "20 hours per

week" should be interpreted in light of the term it modifies: "regular basis." Coverage is excluded when Smith provides childcare on a "regular basis." A common meaning of "regular" is "customary, usual, or normal." *The American Heritage Dictionary of the English Language* 1096 (1978). Hence, if Smith customarily, usually, or normally provides childcare more than 20 hours per week; coverage would be excluded for any resulting injury. Coverage would be excluded even though evidence shows that during some weeks Smith did not provide childcare for more than 20 hours per week. Therefore, Tammy's affidavit—stating that Smith provided childcare for more than 20 hours per week, only eight out of the nineteen weeks before the accident—is not sufficient in itself to prevent application of the exclusion.

■ The Wilsons also contend that the policy is ambiguous because it does not make clear when the regular basis has to occur. "For example, is it the week of the incident, the month of the incident, [or] the policy period during which the incident took place[?]" Appellants' brief at 18. In her affidavit, Tammy recounted that from the workweek beginning December 23, 1996, until the week of the accident, Smith would have provided childcare for more than 20 hours per week only eight out of the nineteen weeks before the accident. However, Tammy also stated three times in her first deposition that Smith watched Sosha—who was in half-day kindergarten at the time—for 30 hours per week during the school year 1996–97. R. at 427 (Errata sheet). The trial court was entitled to accept Tammy's deposition testimony as the usual or normal amount of time Smith

provided childcare from week to week for Sosha.[3]

Moreover, because the parties based their calculations and arguments on the typical 1996–97 school day for Sosha and the other children, the trial court was free to consider the entire course of the 1996–97 school year in deciding whether Smith provided childcare on a regular basis. In other words, the trial court was not limited only to the nineteen weeks the Wilsons have arbitrarily chosen. In sum, the Wilsons have failed to show that the balance of evidence tips against the trial court's finding that Smith provided childcare on a regular basis. *See GKN Co.*, 744 N.E.2d at 401; *Degussa*, 744 N:E.2d at 412, 415.

### B. "Person"

■ The Wilsons also contend, even if Smith provided childcare for Sosha on a regular basis, the policy exclusion is still not triggered. The policy reads that coverage will be excluded when bodily injury "results from the legal liability of any **insured** because of home care services provided to any **person** on a regular basis." R. at 37 (emphasis in original). They argue that the policy is ambiguous because it does not make clear for which **"person"** Smith must provide home care services on a regular basis before coverage is excluded. Does the exclusion apply only when Smith provides care for more than 20 hours per week for the injured child, or for the child who caused an injury, or for any child?

The answer is yes to all three questions. The Wilsons have confused the breadth of the exclusion for ambiguity. By its broad

---

**3.** The trial court also found that, during the weeks Smith did not care for Sosha for more than 20 hours, Smith had "in essence 'contracted'" to provide care for more than 20 hours per week. R. at 422. Because the insurance policy does not exclude coverage based on the time Smith "contracted" to provide care, this finding was in error. We base our decision only on the hours Smith usually provided care for Sosha.

language, the exclusion was written to avoid the risks attendant to providing home care services to any child, including a child who is injured or injures another. The risk of any injury increases as the number of hours one provides childcare increases. In its regulation of childcare, our legislature recognizes this basic principle. *See* IND.CODE § 12–7–2–28.6 (defining a childcare home, which is subject to oversight and regulation, as a residence "in which at least six (6) children ... at any time receive child care ... for more than four (4) hours" in a day). Furthermore, the policy also defines **"person"** as any individual or group. The term **"person"** is not limited to the injured child or the child who causes an injury. Therefore, given the policy's text and basic principles of risk prevention, Farmers Insurance was avoiding the overall risk that increased hours of childcare entail. Therefore, the Wilsons have failed to show that the exclusion was ambiguous.

## CONCLUSION

In sum, the Wilsons have failed to show that the trial court erred in granting judgment in favor of Farmers Insurance. First, the Wilsons have failed to show that the policy terms "regular basis" and "per" are ambiguous. Second, they have failed to show that the balance of evidence tips against the trial court's finding that Smith provided childcare on a regular basis. Third, the Wilsons have failed to show that the policy is ambiguous, inasmuch as coverage is excluded whenever injury results from the provision of childcare to any person.

Judgment affirmed.

FRIEDLANDER, J., and RILEY, J., concur.